# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2014 SEP 23  PM 12: 46

DEPUTY CLERK

Lakiesha Jackson Speed
**Plaintiff**

v.

The Bank of New York Trust Company
NAAS Trustee
**Defendant**

## 3-14CV3425-L

Civil Action No.

## COMPLAINT

FDTPA
Constructive Fraud

\* Attach additional pages as needed.

| | |
|---|---|
| Date | 9/20/14 |
| Signature | Lakiesha Jackson Speed |
| Print Name | Lakiesha Jackson Speed |
| Address | 1116 Melrose Dr. |
| City, State, Zip | Burleson Tx 76028 |
| Telephone | 817-269-4977 |

## STATUTORY DURABLE POWER OF ATTORNEY

**NOTICE**:    THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING.  THEY ARE EXPLAINED IN THE DURABLE POWER OF ATTORNEY ACT, CHAPTER XII, TEXAS PROBATE CODE.    IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU.    YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

TGS
Initials

I, TERRY GLYNN SPEED, of Burleson, Johnson County, Texas appoint LAKIESHA SPEED,  of Burleson, Johnson County, Texas, as my agent to act for me in any lawful way with respect to all of the following powers except for a power that I have crossed out below.

TO WITHHOLD A POWER, YOU MUST CROSS OUT EACH POWER WITHHELD.

> Real property transactions;
>
> Tangible personal property transactions;
>
> Stock and bond transactions;
>
> Commodity and option transactions;
>
> Banking and other financial institution transactions;
>
> Business operating transactions;
>
> Insurance and annuity transactions;
>
> Estate, trust, and other beneficiary transactions;
>
> Claims and litigation;
>
> Personal and family maintenance;
>
> Benefits from social security, Medicare, Medicaid, or other governmental programs or civil or military service;
>
> Retirement plan transactions;
>
> Tax matters.

IF NO POWER LISTED ABOVE IS CROSSED OUT, THIS DOCUMENT SHALL BE CONSTRUED AND INTERPRETED AS A GENERAL POWER OF ATTORNEY AND MY AGENT (ATTORNEY IN FACT) SHALL HAVE THE POWER AND AUTHORITY TO PERFORM OR UNDERTAKE ANY ACTION I COULD PERFORM OR UNDERTAKE IF I WERE PERSONALLY PRESENT.

**SPECIAL INSTRUCTIONS:**

Special instructions are applicable to gifts (initial in front of the following sentence to have it apply):

I grant my agent (attorney in fact) the power to apply my property to make gifts, except that the amount of a gift to an individual may not exceed the amount of annual exclusions allowed from the federal gift tax for the calendar year of the gift.

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

None.

UNLESS YOU DIRECT OTHERWISE ABOVE, THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

This power of attorney is effective immediately and is not affected by my subsequent disability or incapacity.

I agree that any third party who receives a copy of this document may act under it. Revocation of the durable power of attorney is not effective as to a third party until the third party receives actual notice of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

If any agent named by me dies, becomes legally disabled, resigns, or refuses to act, I name the following as successor to that agent: NONE .

Signed on November 16, , 2012.

_TERRY GLYNN SPEED_

TERRY GLYNN SPEED

The above instrument was signed in our presence and at the request of TERRY GLYNN SPEED, and we subscribed our names as attesting witnesses, each of us being at least eighteen (18) years of age, the 16 day of November , 2012.

_William Mason_

WITNESS

_Melissa Mason_

WITNESS

**THE AGENT (ATTORNEY IN FACT), BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.**

STATE OF TEXAS          §

COUNTY OF JOHNSON      §

    This document was acknowledged before me on the 16 day of November 2012, 2012, by TERRY GLYNN SPEED, Principal, and William Mason and Melissa Mason, Witnesses.

Rita Campbell

Notary Public, State of Texas

Deputy District Clerk

1

2                              CASE NO. _____

3

4    TERRY SPEED, an individual        )   IN THE DISTRICT COURT

5                                       )

6              Plaintiff,               )

7         vs.                           )

8                                       )

9    AMERICA'S WHOLESALE LENDER;        )

10   THE BANK OF NEW YORK & THE         )

11   BANK OF NEW YORK TRUST             )

12   COMPANY, N.A. AS TRUSTEE FOR       )

13   SECURITIZED TRUST CWABS ASSET-     )

14   BACKED CERTIFICATES TRUST 2006-    )   _____ JUDICIAL DISTRICT

15   6; COUNTRYWIDE HOME LOANS,         )

16   INC.; CWABS, INC.; COUNTRYWIDE     )

17   HOME LOANS SERVICING,              )

18   L.P.; MORTGAGE ELECTRONIC          )

19   REGISTRATION SYSTEM, AKA           )

20   "MERS" AND DOES 1 THROUGH 100,     )

21   INCLUSIVE                          )

22                                       )

23             Defendants.              )   OF JOHNSON COUNTY, TEXAS

24

25

26

27   _____

28

---

1

PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO

1

**PLAINTIFF'S ORIGINAL PETITION**

2    COMES NOW the Plaintiff, TERRY SPEED ("Plaintiff"), complaining of the Defendants as

3    named above, and each of them, as follows:

4    **I. THE PARTIES**

5

6    1.    Plaintiff is now, and at all times relevant to this action, a resident of the County of

7    JOHNSON, State of TEXAS.

8    2.    Defendant, AMERICA'S WHOLESALE LENDER is a National Banking

9    Association, doing business in the County of JOHNSON, State of TEXAS. Plaintiff is further

10    informed and believes, and thereon alleges, that AMERICA'S WHOLESALE LENDER is the

11    Originator of the loan.

12    3.    Defendant, THE BANK OF NEW YORK & THE BANK OF NEW YORK

13    TRUST COMPANY, N.A., as Trustee for securitized trust CWABS ASSET-BACKED

14    CERTIFICATES TRUST 2006-6. Plaintiff is informed and believes, and thereon alleges

15    that, Defendant THE BANK OF NEW YORK & THE BANK OF NEW YORK TRUST

16    COMPANY, N.A., is a national banking association, doing business in the County of

17    JOHNSON, State of TEXAS and is the purported Master Servicer for Securitized Trust and/or

18    a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of

19    Trust as more particularly described in this Complaint.

20    4.    Defendant, COUNTRYWIDE HOME LOANS, INC.. Plaintiff is informed and

21    believes, and thereon alleges that, Defendant COUNTRYWIDE HOME LOANS, INC. is a

22    corporation, doing business in the County of JOHNSON, State of TEXAS and is the purported

23    Sponsor for Securitized Trust and/or a purported participant in the imperfect securitization of

24    the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

25    5.    Defendant, CWABS, INC.. Plaintiff is informed and believes, and thereon alleges

26    that, Defendant CWABS, INC. is a corporation, doing business in the County of JOHNSON,

27    State of TEXAS and is the purported Depositor for Securitized Trust and/or a purported

28    participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as

more particularly described in this Complaint.

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

6.    Defendant, COUNTRYWIDE HOME LOANS SERVICING, L.P. Plaintiff is informed and believes, and thereon alleges that, Defendant COUNTRYWIDE HOME LOANS SERVICING, L.P., is a corporation, doing business in the County of JOHNSON, State of TEXAS and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

7.    Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., aka MERS ("MERS"), Plaintiff is informed and believes, and thereon alleges, that MERS is a corporation duly organized and existing under the laws of TEXAS, whose last known address is 1818 Library Street, Suite 300, Reston, Virginia 20190; website: http://www.mersinc.org. MERS is doing business in the County of JOHNSON, State of TEXAS. Plaintiff is further informed and believes, and thereon alleges, that Defendant MERS is the purported Beneficiary under the Mortgage/Deed of Trust and/or is a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust, as more particularly described in this Complaint.

8.    At all times relevant to this action, Plaintiff has owned the Property located at 1116 MELROSE DRIVE BURLESON, TX 76028-7100 (the "Property").

9.    Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the Property. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

10.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## II. JURISDICTION

PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO

11.    The transactions and events which are the subject matter of this Complaint all occurred within the County of JOHNSON, State of TEXAS.

12.    The Property is located within the County of JOHNSON, State of TEXAS with an address of 1116 MELROSE DRIVE BURLESON, TX 76028-7100.

### III. INTRODUCTORY ALLEGATIONS

13.    This is an action brought by Plaintiff for Lack of Standing to Foreclose, Wrongful Foreclosure, Quiet Title, Declaratory Judgment, Breach of Contract, violation of the Truth in Lending Act, Fraud, and injunctive and equitable relief, and for compensatory, special, general and punitive damages.

14.    Plaintiff, homeowner, disputes the title and ownership of the real property in question (the "Home"), which is the subject of this action, in that the originating mortgage lender, and others alleged to have or had ownership of Plaintiff's mortgage note and/or Deed of Trust, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Deed of Trust related to the Property, and, thus, do not have lawful ownership or a security interest in Plaintiff's Home which is described in detail herein. For these reasons, the Court should Quiet Title to the property in Plaintiff's name.

1. EXPLANATION OF SECURITIZATION

15.    From 1998 until the financial crash of 2008-2009, over 60 million home loans where sold by originating lender banks to investment banks to be securitized in a complex series of billions of transactions. The Plaintiff's home loan was one of the 60 million notes that were securitized.

16.    Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy, and get pass-though taxation treatment so only the investors would be taxed on earned income. In order to achieve the desired "bankruptcy remoteness," numerous "True Sales" of the loans had to occur, in which

PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO

loans were sold and transferred to the different parties to the securitization for value.

17.    A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred by indorsement, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment or Transfer made every step of the way between each party.

18.    Each REMIC Trust created by the investment banks, usually under New York Law, would be funded with thousands to tens-of-thousands of mortgage notes. In order to maintain their bankruptcy-protected status, REMIC's had to have closing dates by which every mortgage note and/or security device like a Mortgage of Mortgage/Deed of Trust was to be sold to the REMIC and had to be "owned" by the REMIC. Once the REMIC closed, it could accept no more mortgage notes under the terms of REMIC law, and it would begin selling securities backed by payments from homeowners on the notes it "owned".

19.    How a particular mortgage loan ended up being transferred to a REMIC in the securitization process is governed by a contract known as a Pooling and Servicing Agreement ("PSA"). The PSA is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transactions.

20.    When the Plaintiff in this case closed on his/her property, her original lender (or other entity claiming original or near original ownership of the note) signed a PSA that governed plaintiff's particular mortgage note. The PSA agreement, as described in more detail below, detailed the closing date by which the homeowner's loan must be "sold" to the REMIC, and described exactly how the homeowner's note is to find its way from the original lender to the REMIC trust.

21.    A typical PSA calls for a homeowner's note to be transferred at least four times to different key parties before it comes into possession of the REMIC trustee. Here is a chart detailing the typical key party assignment chain required by a typical PSA:

PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO

22.    As part of the process, the banks almost universally separated the promissory note from the Mortgage/Deed of Trust. Under the common law, the holder of the note has the right to payments on the note, and the holder of the note would also hold the powers under the Deed of Trust, like the right to foreclose on the homeowner if the homeowner defaults on the note. Traditionally, before investment banks began securitizing mortgage notes, the holder of the note would universally hold the Mortgage/Deed of Trust. This made sense because the party with the right to collect payments on the note would want to be able to foreclose using the Mortgage/Deed of Trust if the homeowner defaulted.

23.    However, to streamline the securitization process, the investment banks created an entity called Mortgage Electronic Registrations System ("MERS"), who is one of the defendants in this case. The investment banks, in addition to using MERS' electronic database to track the buying, selling, and assignments of securitized mortgage notes (bypassing the county clerks' offices), would name MERS as a "nominee" or "beneficiary" in the deed of trust, and sell the note into securitization but not the deed of trust, thereby separating the mortgage note from the deed of trust. MERS claims the ability under Texas law to transfer the deed of trust to whoever later claims to be the "owner" or "holder" of the homeowners' mortgage note.

24.    Plaintiff alleges that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Promissory Note and Deed of Trust, resulting in imperfect security interests and claims.

25.    Plaintiff further alleges that Defendants, and each of them, cannot establish possession and proper transfer and/or indorsement of the Promissory Note and/or proper assignment of the Deed of Trust herein; therefore, none of the Defendants have perfected any

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

claim of title or security interest in the Property. Defendants, and each of them, do not have the ability to establish that the mortgages that secure the indebtedness, or Note, were legally or properly acquired.

26.     Plaintiff alleges that an actual controversy has arisen and now exists between the Plaintiff and Defendants, and each of them. Plaintiff desires a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Deed of Trust.

27.     Plaintiff also seeks redress from Defendants identified herein for damages, for other injunctive relief, and for cancellation of written instruments based upon:

    a. Void "True Sale(s)," assignments and/or transfers of the Note and deed of trust violating TEXAS law and express terms of the Pooling and Servicing Agreement ("PSA") governing the securitization of Plaintiff's mortgage;

    b. An incomplete and ineffectual perfection of a security interest in Plaintiff's Home due to void transfers and/assignments of Plaintiff's note, and void assginments of Plaintiff's deed of trust from MERS to the foreclosing party; and

    c. Assigning and/or transferring Plaintiff's note and deed of trust in violation of the contract language of the deed of trust itself and giving no notice of those purported assignments under the Truth in Lending Act.

## 2. EXPLANATION OF TILA §1641(g)

28.     An amendment to the Truth in Lending Act ("TILA") (effective since the Helping Families Save their Home Act of 2009) compels a creditor to provide the borrower with a disclosure when the debt (note) is sold to a new owner. *See* 15 U.S.C. §1641(g).

29.     Contents of the notice must include: 1) the identity, address, and telephone number of the new creditor; 2) the date of transfer; 3) how to reach an agent or party having authority to act on behalf of the new creditor; 3) the location and place where transfer of ownership of the debt is recorded; and 4) any other relevant information regarding the new creditor. *Id.*

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

30.    If the creditor fails to provide this notice, the TILA provides for statutory damages of $4,000 per violation plus any actual damages sustained, regardless of intent of the creditor. *See* 15 U.S.C. §1640(a)(1, 2).

3. BREACH OF CONTRACT FACTUAL ALLEGATIONS

31.    The Deed of Trust in this case is an enforceable contract under Texas law. The Deed of Trust defines "Lender" as "AMERICA'S WHOLESALE LENDER."

32.    "MERS" is defined as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns . . . MERS is a beneficiary under this Security Instrument . . ."

33.    The Deed of Trust section is titled "Sale of Note; Change of Loan Servicer; Notice of Grievance." Importantly, the deed of trust states: "the note or a partial interest in the note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower . . ."

34.    The section title from the Deed of Trust is entitled "Acceleration; Remedies." re-defines "Lender," stating: "For purposes of this Section, the term 'Lender' includes any holder of the note who is entitled to receive payments under the note." Only the "Lender" can foreclose on the property.

## IV. **SPECIFIC ALLEGATIONS**

35.    On or about MARCH 29, 2006 (hereinafter referred to as "Closing Date") Plaintiff entered into a consumer credit transaction with AMERICA'S WHOLESALE LENDER by obtaining a $149,615 mortgage loan secured by Plaintiff's principal residence, (Subject Property). This note was secured by a First Mortgage/Trust Deed on the Property in favor of AMERICA'S WHOLESALE LENDER.

36.    Plaintiff's loan was securitized, with the Note not being properly transferred to Defendant, THE BANK OF NEW YORK & THE BANK OF NEW YORK TRUST COMPANY, N.A., acting as the Trustee for the CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6 Trust holding plaintiff's note. Documents filed with the SEC by the securitization participants allegedly claim that the note and Mortgage/Deed of Trust at issue in this case were sold, transferred and securitized by Defendants, with other loans and mortgages

1    with an aggregate principal balance of approximately $1,762,200,100 into the CWABS

2    ASSET-BACKED CERTIFICATES TRUST 2006-6 Trust, which is a Common Law Trust

3    formed pursuant to New York law.

4        37.      An expert, certified, forensic audit of the Plaintiff's loan documents reveals that

5    Plaintiff's mortgage note was required to at least go through this assignment chain of key

6    parties before it reached the REMIC trustee it was destined for:



13        38.      The PSA governing the CWABS ASSET-BACKED CERTIFICATES TRUST

14    2006-6 requires that Plaintiff's note and Deed of Trust had to be indorsed and assigned, or

15    transferred, respectively, to the trust and executed by multiple intervening parties in the above

16    chain of assignment before it reached the REMIC Trustee.

17        39.      Plaintiff executed a series of documents, including but not limited to a Note and

18    Deed of Trust, securing the Property in the amount of note. The original "nominee" of the

19    original lender and "beneficiary" under the Deed of Trust was MERS.

20        40.      Plaintiff is informed and believes, and thereon alleges, that the purchase mortgage

21    on the Property, the debt or obligation evidenced by the Note and the Deed of Trust executed

22    by Plaintiff in favour of the original lender and other Defendants, regarding the Property, was

23    not properly assigned and/or transferred to Defendants operating the pooled mortgage funds or

24    REMIC trusts in accordance with the PSA and/or TEXAS law.

25        41.      Plaintiff alleges that the PSA requires that each Note or Deed of Trust had to

26    be indorsed, assigned, or transferred, respectively, to the trust and executed by multiple

27    intervening parties before it reached the Trust. Here, neither the Note and/or the Mortgage/

28    Deed of Trust, or both, was assigned to the Securitized Trust by the closing date. Therefore,

under the PSA, any assignments of the Mortgage/Deed of Trust beyond the specified closing

date for the Trust are void.

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

42.    Plaintiff further alleges that even if the Mortage/Mortgage/Deed of Trust had been transferred into the Trust by the closing date, the transaction is still void as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers/assignments to and from each intervening party.

43.    Furthermore, no recorded assignment of the deed of trust or transfer of the note that should have taken place under the PSA was ever recorded in the local real property records, as was required to be done under the PSA in order for the CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6 to gain ownership of the Plaintiff's mortgage note.

44.    Plaintiff is informed and believes, and thereon alleges, that the CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6 had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of investment in mortgage backed securities as described in the Prospectus identified herein below. A detailed description of the mortgage loans which form the CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6 Trust is included in the attached loan securitization audit.

45.    Plaintiff further alleges that no documents or records can be produced that demonstrate that prior to the closing date for CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6 Trust, the Note was duly indorsed, transferred and delivered to CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6 Trust, including all intervening transfers. Nor can any documents or records be produced that demonstrate that prior to the closing date, the Mortgage/Deed of Trust was duly assigned, transferred and delivered to CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6 Trust, via the trustee THE BANK OF NEW YORK & THE BANK OF NEW YORK TRUST COMPANY, N.A., including all intervening transfers/assignments.

46.    Plaintiff further alleges that any documents that purport to transfer any interest in the Note to CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6 Trust after the Trust closing date are void as a matter of law, pursuant to New York trust law and relevant portions of the PSA. Also, any violation of the PSA would mean the loan never made it into the CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6 under the strict requirements of New York Trust Law.

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

47.     The tranfers of Plaintiff's debt or obligation did not comply with New York law, and/or other laws and statutes, and, thus, do not constitute valid and enforceable "True Sales." Any security interest in the Property was, thus, never perfected. The alleged holder of the Note is not the beneficiary of the Mortgage/Deed of Trust. The alleged beneficiary of Plaintiff's Mortgage/Deed of Trust does not have the requisite title, perfected security interest or standing to proceed in a foreclosure; and/or is not the real party in interest, or agent or nominee of the real part in interest, with regard to any action taken or to be taken against the Property.

48.     Plaintiff is also informed and believes, and thereon allegess that at all times herein mentioned, and any assignment of a Mortgage/Deed of Trust without proper transfer of the obligation that it secures is a legal nullity.

49.     Plaintiff is informed and believes, and thereon alleges, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the original lender herein) agreed to transfer and indorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiff's herein and all other mortgage loans identified in the PSA.

50.     Plaintiff is further informed and believes, and thereon alleges, that the PSA provides that the transfers and assignments are absolute, were made for valuable consideration, to wit, in exchange for the certificates described in the PSA, and were intended by the parties to be a "bona fide" or a "True Sale." Since, as alleged herein below, True Sales did not actually occur, Plaintiff alleges that the Defendant Trustees are estopped and precluded from asserting any secured or unsecured claim in this case.

51.     Plaintiff is further informed and believes, and thereon alleges, that as a result of the PSA and other documents signed under oath in relation thereto, the Mortgage Originator, Sponsor and Depositor, or any loan servicer working for these entities, are estopped from claiming any interest in the Note that is allegedly secured by the Mortgage/Deed of Trust on Plaintiff's Home herein.

52.     Plaintiff is informed and believes, and thereon alleges, that the Note in this case and the other mortgage loans identified in the PSA, were never actually transferred and delivered by the Mortgage Originator to the Sponsor or to the Depositor nor from the Depositor to the Trustee for the Securitized Trust..

53.     Plaintiff, therefore, alleges, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's estate for lack of proper standing as a real party in interest.

54.     Plaintiff alleges that the deed of trust contract was violated as described in more detail below, as well as the the Truth in Lending Act.

## V. FIRST CAUSE OF ACTION:
## LACK OF STANDING/WRONGFUL FORECLOSURE

55.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

56.     An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendants, and each of them, do not have the right to foreclose on the Property because Defendants, and each of them, have failed to perfect any security interest in the Property, or cannot prove to the court they have a valid interest as a real party in interest to foreclose. Thus, the purported power of sale, or power to foreclose judicially, by the above specified Defendants, and each of them, no longer applies.

57.     Plaintiff is informed and believes and there upon allege that the only individual who has standing to foreclose is the holder or owner of the note because they have a beneficial interest, or the holder's servicer, under Texas Law.

58.     Plaintiff contends that the above specified Defendants, and each of them, do not have the right to foreclose on the Property because said Defendants cannot show a complete chain of valid assignments and transferes of the note togethr with the deed of trust along the chain of securitization, and each of them, did not properly comply with the terms of Defendants' own securitization requirements (contained in the PSA) and falsely or fraudulently prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice.

59.    There were no actual assignments or transfers of the note at any stage of the securitization chain of title (most commonly: 1) Original Lender to Aggregator; 2) Aggregator to Sponsor; 3) Sponsor to Depositor; 4) Depositor to New York Statutory Pass-Through Trust).

60.    If there were any such assignments, each is fraudulent, void, or inadmissible for as alleged already or to be discovered, or if they are valid there is still not a complete chain of title as required by Texas Law for Standing to Non-Judicially Foreclose as a holder. *See **Miller v. Homecomings Financial, LLC**, 881 F. Supp. 2d 825 (S.D. Tex. 2012).*

61.    Plaintiff requests that this Court find that the purported power of sale contained in the Note and Mortgage/Deed of Trust has no force and effect at this time, because Defendants' actions in the processing, handling and attempted foreclosure of this loan involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants, and each of them. Plaintiff further requests that title to the Property remain in its name, with said Mortgage/Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation, and deem that any attempted sale of the Property is "unlawful and void".

**B.    The Assignment of the Plaintiff's Deed of Trust from MERS is Void**

62.    Since the creation of Plaintiff's Note herein and Mortgage/Deed of Trust, Defendant MERS was named the "beneficiary" of the Mortgage/Deed of Trust.

63.    Plaintiff is informed and believes, and thereon alleges, that Defendant MERS lacks the authority under its corporate charter to foreclose a mortgage, or to own or transfer an interest in a securitized mortgage because MERS charter limits MERS' powers and duties to functioning as an electronic registration system of certain types of securities for member banks only.

64.    Plaintiff is informed and believes, and thereon alleges, that in order to conduct a foreclosure action, a person or entity must have standing.

65.    The Note in this action identifies the entity to whom it was payable: the original lender. Therefore, the Note herein cannot be transferred unless it is indorsed or assigned for value; the attachments to the notice of default do not establish that indorsements were made, nor are there any other notices which establish that the original lender indorsed and sold the

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

1    note and deed of trust to MERS.

2    66.    Defendants, and each of them, cannot produce any evidence that the Promissory
3    Note or Deed of trust was ever transferred to MERS; therefore, Defendant MERS could only
4    transfer whatever interest it had in the Mortgage/Deed of Trust it possessed. The Promissory
5    Note and Mortgage/Deed of Trust are inseparable: an assignment of the Note carries the
6    mortgage (ie, Mortgage/Deed of Trust) with it, while an assignment of the Mortgage/Deed of
7    Trust alone is a nullity.[1] Therefore, if one party receives the Note and another party (in this
8    case, MERS) receives the Mortgage/Deed of Trust,  the holder of the Note prevails regardless
9    of the order in which the interests were transferred.

10    67.    Defendants MERS has failed to submit documents authorizing MERS, as
11    nominee for the original lender, to assign the subject deed of trust to the foreclosing enity.
12    Hence, MERS lacked authority as mere nominee to assign Plaintiff's mortgage, making any
13    assignment from MERS defective. In the instant action, MERS, as the nominee not only lacks
14    authority to assign the mortgage, but cannot demonstrate the REMIC Trustee's knowledge or
15    assent to the assignment by MERS to the foreclosing trustee.

16    68.    Any attempt to transfer the beneficial interest of a trust deed without actual
17    ownership of the underlying note, is void under law. Therefore, Defendant, MERS, cannot
18    establish that its assignment to the foreclosing entity is valid and not void. MERS cannot
19    transfer an interest in real property, and cannot recover anything from Plaintiff.

20    69.    Defendants, and each of them, through the actions alleged above, have or claim the
21    right to illegally commence foreclosure under the Note on the Property via a foreclosure action
22    supported by false or fraudulent documents. Said unlawful foreclosure action has caused and
23    continues to cause Plaintiff's great and irreparable injury in that real property is unique.

24    70.    The assignment from MERS to the foreclosing party is completely void because it
25    was signed by a person without any authority whatsover to sign for MERS as an employee of
26    any kind.  The signor was never an employee of MERS or compensated by MERS, nor is there
27    any corporate charter or resolution authorizing the sognor to sign anything for MERS at the
28    time the assignmetn was signed.

---

[1] *Teas v. Republic Nat. Bank of Dallas*, 460 S.W.2d 233 (Tex. Civ. App. Dallas 1970), writ refused
n.r.e., (Mar. 24, 1971); *Cohen v. Grimes*, 18 Tex. Civ. App. 327, 45 S.W. 210 (1898), writ refused;
*Shepard v. Boone*, 99 S.W.3d 263, 50 U.C.C. Rep. Serv. 2d 666 (Tex. App. Eastland 2003).

PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO

71.    Furthermore, the assignment from MERS was signed by a person not the person named on the document to be the signor, and signed without the authority of the person named on the document to be the signor.  Also, the person named on the document as the signor never appeared before the notary at the time the signature was affixed to the document in violation of state recording laws.

72.    The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of its Home and will lose the Property.

73.    Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

## VI. SECOND CAUSE OF ACTION:
## DECLARATORY RELIEF

74.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

75.    An actual controversy has arisen and now exists between Plaintiff and all Defendants concerning their respective rights and duties regarding the property, the Note, and Deed of Trust.

76.    Plaintiff contends that pursuant to the loan documents, Defendants do not have the authority to foreclose upon and sell the Property due to default on the Note because they are not a real party in interest.

77.    Plaintiff is informed and believes and upon that basis alleges that Defendants dispute Plaintiff's contention, and instead contends they may properly act under the Deed of Trust to forelcose on the property under Texas law.

78.    Plaintiff therefore request a judicial determination of the rights, obligations and interest of the parties with regard to the Property, and such determination is necessary and

1    appropriate at this time under the circumstances so that all parties may ascertain and know their

2    rights, obligations and interests with regard to the Property.

3        79.    Plaintiff requests a determination of whether any Defendant has authority to

4    foreclose on the Property.

5        80.    Plaintiff requests a decree declaring that plaintiff is entitled to the exclusive

6    possession of the property.

7        81.    Plaintiff requests a decree declaring that plaintiff owns in fee simple, and is entitled

8    to the quiet and peaceful possession of, the above-described real property, as against all

9    defendants, and the world.

10       82.    Plaintiff also requests the decree declare and adjudge that defendants, and each of

11   them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to

12   the real property or any part of the property.

13                          **VII. <u>THIRD CAUSE OF ACTION:</u>**

14                              <u>QUIET TITLE</u>

15

16       83.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though

17   fully set forth herein.

18       84.    All Defendants named herein claim or wrongly claimed, at some time, a

19   secured monetary interest and estate in the property that was and is adverse to Plaintiff.

20   Defendants appear to claim simultaneously now and in the past the ownership of the note and

21   corresponding power of sale under the Deed of trust securing that note.

22       85.    The claim of all defendants, past, present, and future, are without and are without

23   any right whatsoever, and no defendant has a right, estate, title, lien power of sale or any

24   interest of any kind in or to the property, or any part of the property.

25

26       86.    The claim of all defendants herein named, and each of them, claim some estate,

27   right, title, lien or interest in or to the property adverse to plaintiff's title, and these claims

28   constitute a cloud on Plaintiff's title to the property.

     87.    Plaintiffs, therefore, allege that none of the parties to the securitization transaction,

nor any of the Defendants in this case, now or at anytime, hold/held a perfected, legal, and

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

secured claim in the Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's estate.

88.    Plaintiff requests the decree permanently enjoin defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to Plaintiffs title to the property; and

89.    A declaratory judgment that no defendant has any interest in the property and an judgment voiding all documents on file indicating any interest of any defendant in the Property.

## VIII. FOURTH CAUSE OF ACTION (ALTERNATIVE):
## BREACH OF CONTRACT

90.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

91.    Plaintiff is in a contractual relationship with at least one of the defendants.  At least one of those Defendants maintain a contractual relationship with Plaintiff through the Deed of Trust.

92.    The foreclosing party under the Deed of Trust must be a "Lender" as the Deed of Trust defines "Lender." No Defendant is or can be a "Lender" with power to foreclose because the Deed of Trust defines "Lender" to "include "any note **holder**," and no Defendant can show they hold or held the note.  The only other party that can be a "Lender" under the Deed of Trust, other than the note holder, is the original lender, who sold the note along the chain of securitization years ago.

93.    In order for the original lender to sell the note they must abide by the Deed of Trust which states the note must be sold "together with the security instrument."  No defendant properly transferred the Note "together with" the Deed of Trust, therefore no defendant is a "Lender" with the right to foreclose under the Deed of Trust.

94.    Defendants have breached the Deed of Trust by causing to be filed documents in the real property records indicating they have a secured interest under the Deed of Trust when they do not and cannot act as a "Lender" under that instrument.

95.     Defendants have breached the Deed of Trust by purporting to transfer the Note "for value" in a document filed in the real property records when in actuality no such value was paid or received.

96.     Defendants have further breached by transferring the note not "together with" the Deed of Trust on multiple occasions between themselves, as described above.

97.     Defendants' breaches have caused Plaintiff damages, and such breaches are the proximate cause of those un-liquidated damages.

## IX. FIFTH CAUSE OF ACTION:
## VIOLATION OF T.I.L.A. 1641(g)

98.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

99.     This action is brought pursuant to the Truth in Lending Act (TILA), § 102, 15 U.S.C.A. §§ 1601 et seq. and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C.A. §§ 1261 et seq. Jurisdiction is conferred on this court by TILA, 15 U.S.C.A. § 1640(e). Equitable and other relief is available pursuant to 15 U.S.C.A. § 1641(c), 15 U.S.C.A. § 1640(a) and 15 U.S.C.A. § 1640(b).

100.    Plaintiffs allege that the loan that is the subject matter of this complaint was and is a consumer-credit transaction within the meaning of TILA, 15 U.S.C.A. §§ 1601 et seq.

101.    1641(g) compels a creditor to provide the borrower with a disclosure when the debt (note) is sold to a new owner. *See* 15 U.S.C. §1641(g).

102.    Contents of the notice must include: 1) the identity, address, and telephone number of the new creditor; 2) the date of transfer; 3) how to reach an agent or party having authority to act on behalf of the new creditor; 3) the location and place where transfer of ownership of the debt is recorded; and 4) any other relevant information regarding the new creditor. *Id.*

103.    Every Defendant failed to provide any notice with the required information for every transfer of the note as described above, including but not limited to the purported 2009 assignment of the note from MERS to Citimortgage.

104.    Plaintiff is entitled to statuptory damages for the violations.

105.    Plainitff has sustained actual damages caused by the violations.    *See* 15 U.S.C. §1640(a)(1, 2).

## X. SIXTH CAUSE OF ACTION (ALTERNATIVE):

## INTENTIONAL INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

106.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

107.    The Deed of Trust is a contract in existence that is subject to interference.

108.    All defendants have committed and continue to commit willful and intentional acts of interference with the Deed of Trust, specifically but not limited to interfering with Plaintiff's contractual relationship with the true "Lender" (if any) under the Deed of Trust by asserting rights under the Deed of Trust which have not been validly aquired.

109.    Those acts are the proximate cause of the Plaintiff's damages.

110.    Plaintiff has suffered actual damage or loss.

111.    Defendants have each, at separate times and at multiple times, commited unlawful actions undertaken without a legal right or justifiable excuse.

112.    Such unlawful actions, specifically but not limited to interfering with Plaintiff's contractual relationship with the true "Lender" (if any) under the Deed of Trust by asserting rights under the Deed of Trust which have not been validly aquired, were done with the intent to harm Plaintiff as a party to the Deed of Trust relationship.

113.    Such unlawful actions resulted in actual harm or damage to Plaintiff.

## XI. SEVENTH CAUSE OF ACTION:

## MERS IS A FICTITIOUS ENTITY

114.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

115.    MERS is a fictitious party and therefore any assignment made by it, or any power it may possess in its quistionable capacity as "beneficiary" and "nominee" under the Deed of trust, is absolutely void ab initio, ineffective, and wholly without force and effect as to all matters covered thereby.

116.    MERS has no actual employees and is merely a shell organization for its parent company MERSCORP Holdings, INC.

117.    Alternatively, MERS has no actual employees and is merely a shell organization for its parent company MERSCORP, INC.

## XII. PRAYER FOR RELIEF

WHEREFORE Plaintiff, will ask for the following for each Cause of Action to be awarded:

### ALL CAUSES OF ACTION:

1. For Compensatory Damages in an amount to be determined by proof at trial;
2. For Special Damages in an amount to be determined by proof at trial;
3. For General Damages in an amount to be determined by proof at trial;
4. For Punitive Damages as allowed by law;
5. For Statutory Damages as allowed by law;
6. For Restitution as allowed by law;
7. For Attorney's Fees and Costs of this action under 37.001 and 38.001 of the Tex. Civ. Prac. and Remedies Code;
8. For Declaratory Relief, including but not limited to the following Decrees of this Court that:
   a. Plaintiff, Plaintiff is the prevailing party;
   b. The Trustees of the REMIC Trusts have no enforceable secured or unsecured claim against the Property;
   c. The Sponsor has no enforceable secured or unsecured claim against the Property;
   d. The Depositor has no enforceable secured or unsecured claim against the Property;
   e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property;
   f. Determines all adverse claims to the real property in this proceeding;
   g. Plaintiff is entitled to the exclusive possession of the property;
   h. Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

1      i.   Defendants, and each of them, and all persons claiming under them, have no

2           estate, right, title, lien, or interest in or to the real property or any part of the

3           property.

4

5   Dated: 9/20/14

6                                                    LAW OFFICES OF_____,

7

8

9

10                                                  Attorneys for Plaintiff

11

12                                          **VERIFICATION**

13

14   I am the plaintiff in this action. I have read the foregoing complaint and it is true of my own

15   knowledge, except as to those matters stated on information or belief, and as to those matters, I

16   believe it to be true.

17

18   I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true

19   and correct.

20

21   Date of execution: September 30, 2014

22

23

24

25                                                  PLAINTIFF

26

27

28                                                  NOTARY

[SEAL]

RENA BROWN
My Commission Expires
April 7, 2018

PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO

1
2                                 CASE NO. _____
3
4    TERRY SPEED, an individual          §     IN THE DISTRICT COURT
5                                        §
6                                        §
7    VS.                                 §
8                                        §
9    AMERICA'S WHOLESALE                 §
10   LENDER; THE BANK OF NEW             §
11   YORK & THE BANK OF NEW              §
12   YORK TRUST COMPANY, N.A.            §     _____ JUDICIAL DISTRICT
13   AS TRUSTEE FOR SECURITIZED          §
14   TRUST CWABS ASSET-BACKED            §
15   CERTIFICATES TRUST 2006-            §
16   6; COUNTRYWIDE HOME                 §
17   LOANS, INC.; CWABS, INC.;           §
18   COUNTRYWIDE HOME LOANS              §
19   SERVICING, L.P.; MORTGAGE           §
20   ELECTRONIC REGISTRATION             §     OF JOHNSON COUNTY, TEXAS
21   SYSTEM, AKA "MERS"
22   AND DOES 1 THROUGH 100,
23   INCLUSIVE
24
25
26
27
28

---

                                        1

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

1
2
3
4
## **LIS PENDENS**
5         PLEASE TAKE NOTICE that this action was commenced in the above named court
6    by the above entitled Plaintiff against the above entitled Defendants, and is now pending.
7         The Plaintiff alleges a real property claim affecting real property located at 1116
8    MELROSE DRIVE BURLESON, TX 76028-7100.
9         The land referred to herein is situated in the County of JOHNSON, State of Texas and bears the legal
10             1. _____
11                [legal description]
12
13
14   Dated: 9/20/14
15   _____
16
17   Respectfully Submitted,                    LAW OFFICES,
18
19
20
21
22                                              Plaintiff or Attorney for Plaintiff
23
24
25
26
27
28

2

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

1
2
3                               **VERIFICATION**
4
5   ON THIS 20ᵗʰ DAY OF September, Lakiesha Wilson Speed,
6   KNOWN TO ME, OR PROVED TO ME BY PRESENTATION OF A VALID STATE ID,
7   APPEARED BEFORE ME AND SIGNED THE ABOVE DOCUMENT IN MY PRESENCE
8   SWEARING THE CONTENTS ARE TRUE AND CORRECT TO HIS PERSONAL
9   KNOWLEDGE. FURTHER AFFIANT SAYETH NOT.
10
11                                  
12                              NOTARY
13
14  [SEAL]
15              NOTARY PUBLIC
16              RENA BROWN
                My Commission Expires
                April 7, 2018
                STATE OF TEXAS
17
18
19
20
21
22
23
24
25
26
27
28

                                    3

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CASE NO. _____

| TERRY SPEED, an individual | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| AMERICA'S WHOLESALE | § | |
| LENDER; THE BANK OF NEW | § | |
| YORK & THE BANK OF NEW | § | |
| YORK TRUST COMPANY, N.A. | § | _____ JUDICIAL DISTRICT |
| AS TRUSTEE FOR SECURITIZED | § | |
| TRUST CWABS ASSET-BACKED | § | |
| CERTIFICATES TRUST 2006- | § | |
| 6; COUNTRYWIDE HOME | § | |
| LOANS, INC.; CWABS, INC.; | § | |
| COUNTRYWIDE HOME LOANS | § | |
| SERVICING, L.P.; MORTGAGE | § | |
| ELECTRONIC REGISTRATION | § | OF JOHNSON COUNTY, TEXAS |
| SYSTEM, AKA "MERS" | | |
| AND DOES 1 THROUGH 100, | | |
| INCLUSIVE | | |

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## APPLICATION FOR EX-PARTE TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

COMES NOW, Plaintiff TERRY SPEED ("Plaintiff") and files ***Verified Emergency Petition for Temporary Restraining Order and/or temporary Injunction***, against the listed Defendants. An ex-parte temporary restraining order is appropriate to maintain the status quo. Plaintiff's home will be sold within the next weeks and Plaintiff is subject to eviction action thereafter, without immediate intervention from this Court.

### A. PARTIES

Plaintiff is now, and at all times relevant to this action, a resident of the County of JOHNSON, State of TEXAS.

At all times relevant to this action, Plaintiff has owned the Property located at 1116 MELROSE DRIVE BURLESON, TX 76028-7100 (the "Property").

Defendant, AMERICA'S WHOLESALE LENDER is a National Banking Association, doing business in the County of JOHNSON, State of TEXAS. Plaintiff is further informed and believes, and thereon alleges, that AMERICA'S WHOLESALE LENDER is the Originator of the loan.

Defendant, THE BANK OF NEW YORK & THE BANK OF NEW YORK TRUST COMPANY, N.A., as Trustee for securitized trust CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6. Plaintiff is informed and believes, and thereon alleges that, Defendant THE BANK OF NEW YORK & THE BANK OF NEW YORK TRUST COMPANY, N.A., is a national banking association, doing business in the County of JOHNSON, State of TEXAS and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

Defendant, COUNTRYWIDE HOME LOANS, INC.. Plaintiff is informed and believes, and thereon alleges that, Defendant COUNTRYWIDE HOME LOANS, INC. is a corporation, doing business in the County of JOHNSON, State of TEXAS and is the purported Sponsor for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

1    Defendant, CWABS, INC.. Plaintiff is informed and believes, and thereon alleges that,

2    Defendant CWABS, INC. is a corporation, doing business in the County of JOHNSON, State

3    of TEXAS and is the purported Depositor for Securitized Trust and/or a purported participant

4    in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more

5    particularly described in this Complaint.

6    Defendant, COUNTRYWIDE HOME LOANS SERVICING, L.P. Plaintiff is

7    informed and believes, and thereon alleges that, Defendant COUNTRYWIDE HOME

8    LOANS SERVICING, L.P., is a corporation, doing business in the County of JOHNSON,

9    State of TEXAS and is the purported Master Servicer for Securitized Trust and/or a purported

10   participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as

11   more particularly described in this Complaint.

12   Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,

13   aka MERS ("MERS"), Plaintiff is informed and believes, and thereon alleges, that MERS

14   is a corporation duly organized and existing under the laws of New York, whose last

15   known address is 1818 Library Street, Suite 300, Reston, Virginia 20190; website: http://

16   www.mersinc.org. MERS is doing business in the County of JOHNSON, State of TEXAS.

17   Plaintiff is further informed and believes, and thereon alleges, that Defendant MERS is the

18   purported Beneficiary under the Mortgage/Deed of Trust and/or is a purported participant in the

19   imperfect securitization of the Note and/or the Mortgage/Deed of Trust, as more particularly

20   described in this Complaint.

21   Plaintiff does not know the true names, capacities, or basis for liability of Defendants

22   sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some

23   manner liable to Plaintiff, or claims some right, title, or interest in the Property. Plaintiff will

24   amend this Complaint to allege their true names and capacities when ascertained. Plaintiff

25   is informed and believes, and therefore alleges, that at all relevant times mentioned in this

26   Complaint, each of the fictitiously named Defendants are responsible in some manner for

27   the injuries and damages to Plaintiff so alleged and that such injuries and damages were

28   proximately caused by such Defendants, and each of them.

Plaintiff is informed and believes, and thereon alleges, that at all times herein

mentioned, each of the Defendants were the agents, employees, servants and/or the joint-

PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO

1  venturers of the remaining Defendants, and each of them, and in doing the things alleged herein

2  below, were acting within the course and scope of such agency, employment and/or joint

3  venture.

### B. INTRODUCTION

5  On MARCH 29, 2006, plaintiff executed and delivered to defendant AMERICA'S

6  WHOLESALE LENDER a promissory note payable to Originator in the amount of $149,615.

7  On MARCH 29, 2006, as security to defendant AMERICA'S WHOLESALE LENDER

8  for payment of the note, plaintiff executed a Mortgage/Deed of Trust/mortgage. The Mortgage/

9  Deed of Trust/mortgage was recorded as document number #8487 in the official records of

10  JOHNSON County, Texas. A copy of the Mortgage/Deed of Trust/mortgage is attached,

11  marked Exhibit _____, and incorporated by reference.

12  Defendants, and each of them, intend to sell the property, having given notice that sale

13  of the property. Unless restrained, defendants, and each of them, will thus sell the property or

14  cause the property to be sold. This sale would be to plaintiff's great and irreparable injury, for

15  which pecuniary compensation would not afford adequate relief, in that plaintiff, having no

16  right to redeem the property from the sale, will forfeit the property if the sale takes place as

17  scheduled.

### C. FACTUAL ALLEGATIONS

19  For years, mortgage brokers and lenders have been selling loan products that they knew

20  or should have known would never be able to be repaid by the borrower and would prevent

21  borrowers from ever actually owning the home. Instead, borrowers were offered interest-

22  only, negative amortization, and/or other subprime loan products that amounted to no more

23  than a short term lease until the payments became so unaffordable that the borrowers are

24  now faced with either bankruptcy or foreclosure. The housing bubble of the past decade was

25  created by predatory lending practices, such as charging excessive fees, incorporating payment

26  penalties, negative amortization payments, or other abusive terms in the agreements, providing

27  kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the

28  financing, requiring unnecessary insurance and other products, including mandatory arbitration

clauses, steering borrowers to subprime loans when they qualify for conventional loans, and

using bait and switch tactics. All were rampant within the industry without oversight or good

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

1    judgment and found to be inconsistent with important national objectives, including the goals
2    of fair access to credit, community development, and stable homeownership by the broadest
3    spectrum of America. Rather than offering a loan product that was viable and long-term for
4    the borrower and lender, brokers and lenders greedily sold whatever they could get away with,
5    arguably the primary catalyst for what is now this country's worst economic crisis since the
6    Great Depression.

7        The loan product sold to Plaintiff in this case was exactly the kind of loan that has
8    contributed to our national problem. The Defendants were aware of this trend, and possessed
9    the foresight to advise Plaintiff of this risk. They intentionally concealed the negative
10   implications of the loan they were offering, and as a result, Plaintiff faces the potential of
11   losing their home to the very entity and entities who placed them in this position.

12       On or about MARCH 29, 2006 (hereinafter referred to as "Closing Date") Plaintiff entered
13   into a consumer credit transaction with AMERICA'S WHOLESALE LENDER by obtaining
14   a $149,615 mortgage loan secured by Plaintiff's principal residence, 1116 MELROSE DRIVE
15   BURLESON, TX 76028-7100. This note was secured by a Deed on the Property in favor of
16   AMERICA'S WHOLESALE LENDER.

17       From 1998 until the financial crash of 2008-2009, over 60 million home loans where sold
18   by originating lender banks to investment banks to be securitized in a complex series of billions
19   of transactions. The Plaintiff's home loan was one of the 60 million notes that were securitized.

20       Securitization is the process whereby mortgage loans are turned into securities, or bonds,
21   and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of
22   money to lenders for originating loans, and to provide investments to bond holders which were
23   expected to be relatively safe. The procedure for selling of the loans was to create a situation
24   whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter
25   "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be
26   protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy
27   remoteness," numerous "True Sales" of the loans had to occur, in which loans were sold and
28   transferred to the different parties to the securitization.

     How a particular mortgage loan ended up being transferred to a REMIC TRUST in the
     securitization process is governed by a contract known as a Pooling and Servicing Agreement

("PSA"). The PSA is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transactions. Plaintiff's PSA required at minimum this chain of title:



A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way, and, furthermore, each Note would be indorsed to the next party by the previous assignee of record.

In order for the Trustee of the Securitized REMIC Trust to have a valid and enforceable secured claim against Plaintiff's Home, the Trustee must prove and certify to all parties that, among other things required under the PSA:

    a. There was a complete and unbroken chain of indorsements and transfers of the Note from and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust/Trustee, and that all of these indorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

    b. The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all indorsements and assignments had been completed. Absent such proof, Plaintiff alleges that the Trust cannot demonstrate that it had perfected its security interest in Plaintiff's Home that is the subject of this action. Therefore, if the Defendants, and each of them, did

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

1                not hold and possess the Note on or before the closing date of the Trust herein,

2                they are estopped and precluded from asserting any secured or unsecured claim

3                in this case.

4

5         Plaintiff is informed and believes, and thereon alleges, that pursuant to the terms of the

6 PSA, the Mortgage Originator (i.e., the original lender herein) agreed to transfer and indorse to

7 the Trustee for the Securitized Trust, without recourse, including all intervening transfers and

8 assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiff's

9 herein and all other mortgage loans identified in the PSA.

10        Based upon the foregoing, Plaintiff is further informed and believes, and thereon

11 alleges, that the following deficiencies exist, in the "True Sale" and securitization process as

12 to this Mortgage/Deed of Trust which renders invalid any security interest in the Plaintiff's

13 mortgage, including, but not limited to:

14            a.  The splitting or separation of title, ownership and interest in Plaintiff's Note and

15                Mortgage/Deed of Trust of which the original lender is the holder, owner and

16                beneficiary of Plaintiff's Mortgage/Deed of Trust;

17

18            b.  When the loan was sold to each intervening entity, there were no Assignments

19                of the Mortgage/Deed of Trust to or from any intervening entity at the time of

20                the sale. Therefore, "True Sales" could not and did not occur;

21

22            c.  The failure to assign and transfer the beneficial interest in Plaintiff's Mortgage/

23                Deed of Trust to THE BANK OF NEW YORK & THE BANK OF NEW

24                YORK TRUST COMPANY, N.A., in accordance with the PSA of the

25                Defendants, as Securitization Participants;

26

27            d.  The failure to indorse, assign and transfer Plaintiff's Note and/or mortgage to

28                Defendant THE BANK OF NEW YORK & THE BANK OF NEW YORK

                    TRUST COMPANY, N.A., as Trustee for CWABS ASSET-BACKED

                    CERTIFICATES TRUST 2006-6 Trust, in accordance with the PSA;

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

e.  No Assignments of Beneficiary or Indorsements of the Note to each of the intervening entities in the transaction ever occurred under TEXAS law, which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

f.  Defendants, and each of them, violated the pertinent terms of the PSA.

## D. APPLICATION FOR EX-PARTE TRO AND TEMPORARY INJUNCTION

1. TRO'S AND INJUNCTIONS IN THE FORECLOSURE CONTEXT:

The most common situation involving the use of injunctive relief in connection with foreclosure involves an application by the debtor to restrain a pending nonjudicial foreclosure sale. Numerous cases have been decided by Texas courts dealing with this situation, and where appropriate, courts act to enjoin nonjudicial foreclosure sales to protect and preserve the status quo pending final resolution of the dispute between the debtor and the creditor on the merits. See, e.g., Kaplan v. Tiffany Dev. Corp., 69 S.W.3d 212 (Tex. App.—Corpus Christi 2001, *no pet.*); Seaborg Jackson Partners v. Beverly Hills Savings, 753 S.W.2d 242 (Tex. App.—Dallas 1988, *no writ*); W.P. Swanson v. Grassedonio, 647 S.W.2d 716 (Tex. App.—Corpus Christi 1983, *no writ*).

Temporary restraining orders are defined by Rule 680 of the Texas Rules of Civil Procedure. Temporary restraining orders, unlike temporary injunctions, may be granted without notice to the adverse party.  Tex. R. Civ. P. 680.  However, an application for a temporary restraining order must be accompanied by an affidavit or verified complaint clearly establishing from "specific facts … that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon".  Ex parte Conway, 419 S.W.2d 827 (Tex.1967). The court may grant a temporary restraining order restraining an adverse party for a period of only 14 days. Tex. R. Civ. P. 680.

Unlike temporary restraining orders, no temporary injunction may be issued without notice to the adverse party. Tex. R. Civ. P. 681. A temporary injunction also differs from a temporary restraining order, in terms of the duration of the restraint granted by a trial court's interlocutory order. Unlike a temporary restraining order, which is limited in duration, a

temporary injunction is effective for as long as the applicant's cause of action remains pending and until final judgment has been entered on the merits of the applicant's cause of action. Keck v. First City Nat'l Bank of Houston, 731 S.W.2d 699 (Tex. Ct. App.-Houston [14th Dist.] 1987, no writ).   Temporary injunctions, unlike temporary restraining orders, cannot be founded simply upon sworn pleadings or affidavits, but require the presentation of evidence.  Letson v. Barnes, 979 S.W.2d 414 (Tex.App.—Amarillo 1998, pet. denied).

II. STANDARD FOR EX-PARTE TRO

Inasmuch as a temporary restraining order may be obtained without notice to the adverse party, it is most often sought where immediate relief is necessary to protect the applicant. In order to obtain immediate relief without notice, however, the application for a temporary restraining order must clearly demonstrate from specific facts that the applicant will suffer "immediate and irreparable injury, loss, or damage" before notice can be served on the adverse party and a hearing on the application can be held. In the foreclosure context, the applicant generally sets forth that he or she owns certain property which is the subject of certain security documents, that there has been notice of a foreclosure sale with respect to the property, and that the applicant has a proper basis to restrain the foreclosure sale to prevent interference by the creditor with the debtor's property rights in the collateral.  15 Tex. Prac., Texas Foreclosure Law & Prac. § 11.34; Ex parte Conway, 419 S.W.2d 827 (Tex.1967).

III. STANDARD FOR TEMPORARY INJUNCTION

1.        To obtain a  temporary injunction, equity requires the applicant to plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim if the injunction is not granted.  Cardinal Health Staffing Network, Inc. v. Bowen, 106 S.W.3d 230 (Tex. App. Houston 1st Dist. 2003); Butnaru v. Ford Motor Co., 84 S.W.3d 198 (Tex. 2002); Khaledi v. H.K. Global Trading, Ltd., 126 S.W.3d 273 (Tex. App. San Antonio 2003).\

2.        The standard for Temporary Injunction will be satisfied after hearing and presentation of the evidence to the Court.

IV. IMMEDIATE AND IRREPARABLE INJURY, LOSS, OR DAMAGE WILL RESULT IF THE TRO IS NOT GRANTED

3.        The foreclosure sale and/or any further transfer of ownership or encumbrance

9

PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO

must be enjoined because the evidence elicited herein by this verfied application is sufficient to show immediate and irreparable injury, loss, or damage to plaintiff. **Plaintiff's evidence has shown that the foreclosing defendant(s), have no capacity to conduct a non-judicial foreclosre of the subject property.**

4.       The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff.  Plaintiff will not have the beneficial use and enjoyment of the home they own and will lose the Property.  Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below (or in a separate pleading) is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

5.       FURTHERMORE, Defendants cannot be served in time as the trustee sale date is October 1, 2013, and more so because it will take time to determine the location for service of process for each of the FOUR possible substitute trustees named in the Notice of Default. *See* Exhibit A.

V.  THE STANDARD FOR TEMPORARY INJUNCTION IS SATISFIED

6.       Plaintiff will show upon notice and hearing that he has: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim if the injunction is not granted.  *See Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230 (Tex. App. Houston 1st Dist. 2003); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002); *Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273 (Tex. App. San Antonio 2003).

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

1
2
3
4
5
6
7               **E. PRAYER FOR RELIEF**
8    Plaintiff requests that this Court issue an EX-PARTE TEMPORARY RESTRAINING
9    ORDER and Temporary Injunction to restrain, until a hearing on the order to show cause why
10   Defendants and their employees, agents, and persons acting with them on their behalves should
11   not be enjoined from transferring ownership of or further encumbering Plaintiffs' Property at a
12   non-judicial foreclosure sale.
13
14
15   Dated 9/30/14
16
17
18   *[Signature]*
19   Attorney for Plaintiff
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

1
2
3
4
5
6
7     **VERIFICATION**
8
9     I am the plaintiff in this action. I have read the foregoing complaint and it is true of my own

10    knowledge, except as to those matters stated on information or belief, and as to those matters, I

11    believe it to be true.

12

13    I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true

14    and correct.

15

16    *Date of execution:* September 30, 2014

17

18

19                        PLAINTIFF

20

21

22    

23                        NOTARY

24

25    [SEAL]

26                    RENA BROWN
                My Commission Expires
27                    April 7, 2018

28

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CASE NO. _____

| | | |
|---|---|---|
| TERRY SPEED, an individual | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| | § | |
| AMERICA'S WHOLESALE | § | |
| LENDER; THE BANK OF NEW | § | |
| YORK & THE BANK OF NEW | § | |
| YORK TRUST COMPANY, N.A. | § | _____ JUDICIAL DISTRICT |
| AS TRUSTEE FOR SECURITIZED | § | |
| TRUST CWABS ASSET-BACKED | § | |
| CERTIFICATES TRUST 2006- | § | |
| 6; COUNTRYWIDE HOME | § | |
| LOANS, INC.; CWABS, INC.; | § | |
| COUNTRYWIDE HOME LOANS | § | |
| SERVICING, L.P.; MORTGAGE | § | |
| ELECTRONIC REGISTRATION | § | OF JOHNSON COUNTY, TEXAS |
| SYSTEM, AKA "MERS" | | |
| AND DOES 1 THROUGH 100, | | |
| INCLUSIVE | | |

13

PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO

1
2
3
4
5
6
7
8
9

## ORDER GRANTING EX-PARTE TEMPORARY RESTRAINNG ORDER HALTING FORECLOSURE SALE

10   Plaintiff has filed an Application for Temporary Injunction and, in connection
11 therewith, has presented an application for Ex-Parte Temporary Restraining Order, together
12 with Plaintiff's Original Petition and Application for Injunctive Relief and verification
13 supporting the Application presented. It clearly appears from the papers that Plaintiff is
14 probably entitled to a temporary injunction.  THEREFORE the purported creditor/mortgagee(s)
15 **AMERICA'S WHOLESALE LENDER; THE BANK OF NEW YORK & THE BANK**
16 **OF NEW YORK TRUST COMPANY, N.A. AS TRUSTEE FOR SECURITIZED**
17 **TRUST CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6; COUNTRYWIDE**
18 **HOME LOANS, INC.; CWABS, INC.; COUNTRYWIDE HOME LOANS SERVICING,**
19 **L.P.; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, AKA "MERS" AND**
20 **DOES 1 THROUGH 100, INCLUSIVE;** defendants herein, and their agents, employees,
21 TRSUTEES and fiduciaries are immediately deterred and barred from holding a scheduled
22 trustee's sale covering certain real property located in JOHNSON County, Texas, to wit: 1116
23 MELROSE DRIVE BURLESON, TX 76028-7100, more particularly described as:
24 _____
25 _____
26 _____
27 _____
28

Defendants will commit said acts on _____[date of
scheduled sale] before notice of a hearing on the Application for Temporary Injunction can

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

1    be served and hearing had; that if the commission of said acts be not immediately restrained,

2    Plaintiff will suffer immediate and irreparable injury, to-wit: Plaintiff will suffer wrongful

3    interference with possession and ownership of the unique real property.  This order is issued

4    due to the fact plaintiff has shown they are probable entitled to a temporary injunction based on

5    the sworn evidence presented.

6         It is therefore ORDERED that **AMERICA'S WHOLESALE LENDER; THE**

7    **BANK OF NEW YORK & THE BANK OF NEW YORK TRUST COMPANY, N.A. AS**

8    **TRUSTEE FOR SECURITIZED TRUST CWABS ASSET-BACKED CERTIFICATES**

9    **TRUST 2006-6; COUNTRYWIDE HOME LOANS, INC.; CWABS, INC.;**

10    **COUNTRYWIDE HOME LOANS SERVICING, L.P.; MORTGAGE ELECTRONIC**

11    **REGISTRATION SYSTEM, AKA "MERS" AND DOES 1 THROUGH 100,**

12    **INCLUSIVE**; and their agents, employees, trustees, and substitute trustees be, and they hereby

13    are commanded forthwith to desist and refrain from holding a trustee's sale or foreclosure sale

14    of the property more particularly described above, for all purposes from the date of entry of this

15    order until the fourteenth (14th) day after entry or until further order of this Court.

16         It is further ORDERED that the Application of Plaintiff for Temporary Injunction

17    be heard before the District Court of County, Texas on _____, 20____

18    at_____ o'clock .m. in the courtroom of the _____ District Court of JOHNSON

19    County, Texas.

20         The Clerk of the above-entitled Court shall forthwith, on the filing by Plaintiff of

21    the Bond hereinafter required, and on approving same according to law, issue a Temporary

22    Restraining Order in conformity with the law and the terms of this Order.  This Order shall not

23    be effective unless and until Plaintiff executes and files with the Clerk, a Bond in conformity

24    with the law, in the amount of Dollars $_____.

25    SIGNED    on    this    _____day    of    _____,    20____,    at

26    _____o'clock ___.m.

27

28

_____

Judge Presiding

**PLAINTIFF'S ORIGINAL PETITION and APPLICATION FOR EX-PARTE TRO**

# EXHIBIT





**Certified Forensic Loan Auditors**

---

# *CERTIFIED FORENSIC LOAN AUDITORS, LLC*

13101 West Washington Blvd., Suite 140, Los Angeles, CA 90066
Phone: 310-432-6304; Sales@CertifiedForensicLoanAuditors.com
www.CertifiedForensicLoanAuditors.com

---

# *PROPERTY*
# *SECURITIZATION ANALYSIS REPORT*TM

**"This is a Securitization Analysis Report and not a Forensic Audit Report"**

*Prepared for:*

***TERRY SPEED***

*For Property Address*

***1116 Melrose Drive***
***Burleson, TX 76028-7100***

*Prepared on:*

***September 3, 2014***

---

Disclosure: You have engaged Certified Forensic Loan Auditors, LLC to examine your real estate documents. This information is not to be construed as legal advice or the practice of law, pursuant to *Business and Professions Code § 6125 et seq*, it is the intent of CFLA, its members, auditors and independent contractors, not to engage in activities that could be considered the practice of law by conduct exhibiting any of the following practices: "*...the doing and/or performing of services in a court of justice in any matter depending therein throughout the various stages and in conformity with the adopted rules of procedure. It includes legal advice and counsel and the preparation of legal instruments and contracts by which the legal rights are secured although such matter may or may not be depending in a court.*"

Page | 1

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

# SECTION 1:   TRANSACTION DETAILS

## BORROWER & CO-BORROWER:

| BORROWER | CO-BORROWER |
|---|---|
| Terry Speed | - |
| **CURRENT ADDRESS** | **SUBJECT ADDRESS** |
| | 1116 Melrose Drive, Burleson, TX 76028 |

## TRANSACTION PARTICIPANTS

| AMOUNT | MORTGAGE SERVICER | MORTGAGE NOMINEE/ BENEFICIARY |
|---|---|---|
| $149,615.00 | Bank of America, N.A. | Mortgage Electronic Registration Systems, Inc. ("MERS") PO Box 2026 Flint, MI 48501-2026 (888)679-MERS |
| **ORIGINAL MORTGAGE LENDER** | **LOAN TYPE** | **TITLE COMPANY** |
| America's Wholesale Lender 4500 Park Granada Calabasas, CA 91302 | Conventional 30 Year Mortgage with a Fixed Rate for the first 2 years & Adjustable Rate for the remaining 28 years | TBD |

Page | 2

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

# SECTION 2:   SECURITIZATION

# <u>SECURITIZATION PARTICIPANTS:</u>

| ORIGINATOR/LENDER | SPONSOR/SELLER | DEPOSITOR |
|---|---|---|
| AMERICA'S WHOLESALE LENDER | COUNTRYWIDE HOME LOANS, INC. | CWABS, INC. |
| **ISSUING ENTITY** | **TRUSTEES** | **MASTER SERVICER/ SERVICER** |
| CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6 | THE BANK OF NEW YORK & THE BANK OF NEW YORK TRUST COMPANY, N.A. | COUNTRYWIDE HOME LOANS SERVICING, L.P. |
| **CUSTODIAN** | **CUT – OFF DATE** | **CLOSING DATE** |
| THE BANK OF NEW YORK & THE BANK OF NEW YORK TRUST COMPANY, N.A. | March 1, 2006 | On or about March 29, 2006 |

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

```
Filed pursuant to Rule 424(B)(5)
Registration File No. 333-331591
```

**PROSPECTUS SUPPLEMENT**
**(TO PROSPECTUS DATED FEBRUARY 23, 2006)**


```
$1,762,200,100
(Approximate)
```


**CWABS, INC.**
**DEPOSITOR**


**COUNTRYWIDE HOME LOANS**
**SPONSOR AND SELLER**


**COUNTRYWIDE HOME LOANS SERVICING LP**
**MASTER SERVICER**


**CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6**
**ISSUING ENTITY**


**ASSET-BACKED CERTIFICATES, SERIES 2006-6**


**http://www.sec.gov/Archives/edgar/data/1021913/000095013606002519/file001.htm**

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

# SUMMARY OF TRANSACTION AND TRANSACTON PARTIES

### SUMMARY

THIS SUMMARY HIGHLIGHTS SELECTED INFORMATION FROM THIS DOCUMENT AND DOES NOT CONTAIN ALL OF THE INFORMATION THAT YOU NEED TO CONSIDER WHEN MAKING YOUR INVESTMENT DECISION. TO UNDERSTAND ALL OF THE TERMS OF AN OFFERING OF THE CERTIFICATES, READ THIS ENTIRE DOCUMENT AND THE ACCOMPANYING PROSPECTUS CAREFULLY.

WHILE THIS SUMMARY CONTAINS AN OVERVIEW OF CERTAIN CALCULATIONS, CASH FLOW PRIORITIES AND OTHER INFORMATION TO AID YOUR UNDERSTANDING, YOU SHOULD READ CAREFULLY THE FULL DESCRIPTION OF THESE CALCULATIONS, CASH FLOW PRIORITIES AND OTHER INFORMATION IN THIS PROSPECTUS SUPPLEMENT AND THE ACCOMPANYING PROSPECTUS BEFORE MAKING ANY INVESTMENT DECISION.

**ISSUING ENTITY**

CWABS Asset-Backed Certificates Trust 2006-6, a common law trust formed under the laws of the State of New York.

See "The Issuing Entity" in this prospectus supplement.

**DEPOSITOR**

CWABS, Inc., a Delaware corporation and a limited purpose finance subsidiary of Countrywide Financial Corporation, a Delaware corporation.

See "The Depositor" in the prospectus.

**SPONSOR AND SELLERS**

Countrywide Home Loans, Inc. will be the sponsor of the transaction and a seller of a portion of the mortgage loans. Other sellers may include one or more special purpose entities established by Countrywide Financial Corporation or one of its subsidiaries, which acquired the mortgage loans they are selling directly from Countrywide Home Loans, Inc.

See "Servicing of the Mortgage Loans -- Countrywide Home Loans" in this prospectus supplement.

**MASTER SERVICER**

Countrywide Home Loans Servicing LP.

See "Servicing of the Mortgage Loans -- The Master Servicer" in this prospectus

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

supplement.

**TRUSTEE**

The Bank of New York, a New York banking corporation.

See "Description of the Certificates -- The Trustee" in this prospectus supplement.

**CO-TRUSTEE**

The Bank of New York Trust Company, N.A.

See "Description of the Certificates -- The Co-Trustee" in this prospectus supplement.

**THE NIM INSURER**

After the closing date, a separate trust or trusts (or other form of entity) may be established to issue net interest margin securities secured by all or a portion of the Class P and Class C Certificates. Those net interest margin securities may have the benefit of one or more financial guaranty insurance policies that guaranty payments on those securities. The insurer or insurers issuing these financial guaranty insurance policies are referred to in this prospectus supplement as the "NIM Insurer." The references to the NIM Insurer in this prospectus supplement apply only if the net interest margin securities are so insured.

Any NIM Insurer will have a number of rights under the pooling and servicing agreement that will limit and otherwise affect the rights of the holders of the offered certificates. Any insurance policy issued by a NIM Insurer will not cover, and will not benefit in any manner whatsoever, the offered certificates.

See "Risk Factors--Rights of the NIM Insurer" in this prospectus supplement.

**POOLING AND SERVICING AGREEMENT**

The pooling and servicing agreement among the sellers, the master servicer, the depositor, the trustee and the co-trustee, under which the issuing entity will be formed.

**CUT-OFF DATE**

Initial Mortgage Loans:

For any initial mortgage loan, the later of March 1, 2006 and the origination date of that mortgage loan (referred to as the initial cut-off date).

Page | 6

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

Subsequent Mortgage Loans:

For any subsequent mortgage loan, the later of the first day of the month of the related subsequent transfer date and the origination date of that subsequent mortgage loan (referred to as the subsequent cut-off date).

**CLOSING DATE**

On or about March 29, 2006.

**PRE-FUNDING**

On the closing date, the depositor may deposit an amount of up to 25% of the initial aggregate certificate principal balance of the certificates issued by the issuing entity in a pre-funding account (referred to as the pre-funded amount).

Pre-Funded Amount:

Any pre-funded amount will not exceed 25% of the initial aggregate certificate principal balance of the certificates issued by the issuing entity, which will be allocated between the loan groups so that the amount allocated to any loan group will not exceed 25% of the aggregate certificate principal balance of the classes of certificates related to that loan group.

Funding Period:

Any funding period will begin on the closing date and end on the earlier of (x) the date the amount in the pre-funding account is less than $175,000 and (y) May 12, 2006.

Use of Pre-Funded Amount:

Any pre-funded amount is expected to be used to purchase subsequent mortgage loans. Any pre-funded amount not used during the funding period to purchase subsequent mortgage loans will be distributed to holders of the related senior certificates as a prepayment of principal on the distribution date immediately following the end of the funding period.

Restrictions on Subsequent Mortgage Loan Purchases:

Purchases of subsequent mortgage loans are subject to the same criteria as the initial mortgage loans and additional restrictions related to the composition of the related loan group following the acquisition of the subsequent mortgage loans, as described in this prospectus supplement.

Interest Shortfall Payments:

To the extent needed to make required interest payments on the interest-bearing

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

certificates on or prior to the June 2006 distribution date, Countrywide Home Loans, Inc. will make interest shortfall payments to the issuing entity to offset shortfalls in interest collections attributable to the pre-funding mechanism or because newly originated loans do not have a payment due date in the due period related to the subject distribution date.

See "The Mortgage Pool -- Pre-Funding" in this prospectus supplement.

**http://www.sec.gov/Archives/edgar/data/1021913/000095013606002519/file001.htm**

## ASSIGNMENT OF THE MORTGAGE LOANS

**ASSIGNMENT OF THE MORTGAGE LOANS**

Pursuant to the pooling and servicing agreement dated as of March 1, 2006 (the "POOLING AND SERVICING AGREEMENT"), among the Depositor, the Master Servicer, the Sellers, The Bank of New York, as trustee (the "TRUSTEE") and The Bank of New York Trust Company, N.A., as co-trustee (the "CO-TRUSTEE"), the Depositor on the Closing Date will sell, transfer, assign, set over and otherwise convey without recourse to the Trustee in trust for the benefit of the certificateholders, all right, title and interest of the Depositor in and to each Initial Mortgage Loan and all right, title and interest in and to all other assets included in the issuing entity, including all principal and interest received on or with respect to the Initial Mortgage Loans after the Initial Cut-off Date (exclusive of any scheduled principal due on or prior to the Initial Cut-off Date and any interest accruing prior to the Initial Cut-off Date) and the Pre-Funded Amount, if any, deposited in the Pre-Funding Account on the Closing Date.

In connection with the transfer and assignment of the Mortgage Loans, the Depositor will deliver the following documents to the Co-Trustee (collectively constituting the "MORTGAGE FILE") with respect to each Initial Mortgage Loan and each Subsequent Mortgage Loan, if any (collectively, the "MORTGAGE LOANS"):

(1)   the original Mortgage Note, endorsed by manual or facsimile signature in blank in the following form: "Pay to the order of _____ without recourse", with all intervening endorsements that show a complete chain of endorsement from the originator to the person endorsing the Mortgage Note, or, if the original Mortgage Note has been lost or destroyed and not replaced, an original lost note affidavit, stating that the original Mortgage Note was lost or destroyed, together with a copy of the related Mortgage Note and all such intervening endorsements,

(2)   the original recorded Mortgage or a copy thereof with recording information,

(3)   a duly executed assignment of the Mortgage to "Asset-Backed Certificates, Series 2006-6, CWABS, Inc., by The Bank of New York, a New

Page | 8

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

York banking corporation, as trustee under the Pooling and Servicing Agreement dated as of March 1, 2006, without recourse," in recordable form, or a copy thereof with recording information as described in the Pooling and Servicing Agreement,

     (4)    the original recorded assignment or assignments of the Mortgage or a copy of such assignments, with recording information, together with all interim recorded assignments of such Mortgage or a copy of such assignments, with recording information,

     (5)    the original or copies of each assumption, modification, written assurance or substitution agreement, if any, and

     (6)    the original or duplicate original lender's title policy and all riders thereto or a copy of lender's title policy and all riders thereto or a printout of the electronic equivalent and all riders thereto or, in the event such original title policy has not been received from the insurer, such original or duplicate original lender's title policy and all riders thereto will be delivered within one year of the Closing Date.

Notwithstanding the foregoing, in lieu of providing the documents set forth in clauses (3) and (4) above, the Depositor may at its discretion provide evidence that the related Mortgage is held through the MERS(R) System. In addition, the Mortgages for some or all of the Mortgage Loans in the issuing entity that are not already held through the MERS(R) System may, at the discretion of the Master Servicer, in the future be held through the MERS(R) System. For any Mortgage held through the MERS(R) System, the Mortgage is recorded in the name of Mortgage Electronic Registration Systems, Inc., or MERS(R), as nominee for the owner of the Mortgage Loan, and subsequent assignments of the Mortgage were, or in the future may be, at the discretion of the Master Servicer, registered electronically through the MERS(R) System. For each of these Mortgage Loans, MERS(R) serves as mortgagee of record on the Mortgage solely as a nominee in an administrative capacity on behalf of the Trustee, and does not have any interest in the Mortgage Loan.

Pursuant to the Pooling and Servicing Agreement, the Depositor will be required to deliver (or cause delivery of) the Mortgage Files:

     (A)    not later than the Closing Date, with respect to at least 50% of the Initial Mortgage Loans in each Loan Group, and not later than the relevant Subsequent Transfer Date, with respect to at least 10% of the Subsequent Mortgage Loans in each Loan Group conveyed on any related Subsequent Transfer Date,

     (B)    not later than twenty days after the Closing Date, with respect to at least an additional 40% of the Initial Mortgage Loans in each Loan Group, and not later than twenty days after the relevant Subsequent Transfer Date with respect to the remaining Subsequent Mortgage Loans conveyed on any related Subsequent Transfer Date, and

     (C)    not later than thirty days after the Closing Date, with respect to the remaining Initial Mortgage Loans.

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

Assignments of the Mortgage Loans to the Trustee (or its nominee) will be recorded in the appropriate public office for real property records, except in states (such as California) as to which an opinion of counsel is delivered to the effect that the recording is not required to protect the Trustee's interests in the Mortgage Loan against the claim of any subsequent transferee or any successor to or creditor of the Depositor or the applicable Seller. As to any Mortgage Loan, the recording requirement exception described in the preceding sentence is applicable only so long as the related Mortgage File is maintained in the possession of the Co-Trustee in one of the states to which the exception applies. In the event an assignment is delivered to the Trustee in blank and the related Mortgage File is released by the Trustee pursuant to applicable provisions of the Pooling and Servicing Agreement, the Trustee will complete the assignment as provided in subparagraph (3) above prior to the release. If the assignment of the Mortgage Loan is required to be recorded to protect the interest of the Trustee in the Mortgage Loans, the Master Servicer is required to cause each previously unrecorded assignment to be submitted for recording.

The Co-Trustee will review the Initial Mortgage Loan documents on or prior to the Closing Date (or promptly after the Co-Trustee's receipt of any document permitted to be delivered after the Closing Date), and the Subsequent Mortgage Loan documents promptly after the Co-Trustee's receipt thereof on or after the related Subsequent Transfer Date as described above, and the Co-Trustee will hold the Mortgage Loan documents in trust for the benefit of the holders of the Certificates in accordance with its customary procedures, including storing the documents in fire-resistant facilities. After review of the Mortgage Loan documents, if any document is found to be missing or defective in any material respect, the Trustee is required to notify the Master Servicer and Countrywide Home Loans in writing. If Countrywide Home Loans cannot or does not cure the omission or defect within 90 days of its receipt of notice from the Trustee or the Co-Trustee, Countrywide Home Loans is required to repurchase the related Mortgage Loan from the issuing entity at a price (the "PURCHASE PRICE") equal to the sum of:

   (i)   100% of the unpaid principal balance (or, if the purchase or repurchase, as the case may be, is effected by the Master Servicer, the Stated Principal Balance) of the Mortgage Loan as of the date of the purchase,

   (ii)  accrued interest thereon at the applicable Mortgage Rate (or, if the purchase or repurchase, as the case may be, is effected by the Master Servicer, at the Net Mortgage Rate) from (a) the date through which interest was last paid by the borrower (or, if the purchase or repurchase, as the case may be, is effected by the Master Servicer, the date through which interest was last advanced by, and not reimbursed to, the Master Servicer) to (b) the Due Date in the month in which the Purchase Price is to be distributed to certificateholders, and

   (iii) any costs, expenses and damages incurred by the issuing entity resulting from any violation of any predatory or abusive lending law in connection with the Mortgage Loan.

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

Rather than repurchase the Mortgage Loan as provided above, Countrywide Home Loans may remove the Mortgage Loan (a "DELETED MORTGAGE LOAN") from the issuing entity and substitute in its place another Mortgage Loan of like kind (a "REPLACEMENT MORTGAGE LOAN"); however, a substitution is only permitted within two years after the Closing Date, and may not be made unless an opinion of counsel is provided to the effect that the substitution would not disqualify any REMIC election made by the Trustee or result in a prohibited transaction tax under the Internal Revenue Code of 1986, as amended (the "CODE"). Any Replacement Mortgage Loan generally will, on the date of substitution, among other characteristics set forth in the Pooling and Servicing Agreement:

(1)    have a Stated Principal Balance, after deduction of the principal portion of the Scheduled Payment due in the month of substitution, not in excess of, and not less than 90% of, the Stated Principal Balance of the Deleted Mortgage Loan (the amount of any shortfall to be forwarded by Countrywide Home Loans to the Master Servicer and deposited by the Master Servicer in the Certificate Account not later than the succeeding Determination Date and held for distribution to the holders of the Certificates on the related Distribution Date),

(2)    if the Deleted Mortgage Loan that is being replaced is an Adjustable Rate Mortgage Loan, have a Maximum Mortgage Rate not more than 1% per annum higher or lower than the Maximum Mortgage Rate of the Deleted Mortgage Loan,

(3)    if the Deleted Mortgage Loan that is being replaced is an Adjustable Rate Mortgage Loan, have a minimum Mortgage Rate specified in its related Mortgage Note (the "MINIMUM MORTGAGE RATE") not more than 1% per annum higher or lower than the Minimum Mortgage Rate of the Deleted Mortgage Loan,

(4)    if the Deleted Mortgage Loan that is being replaced is an Adjustable Rate Mortgage Loan, have the same Mortgage Index and intervals between Adjustment Dates as the Deleted Mortgage Loan, an Initial Periodic Rate Cap and a Subsequent Periodic Rate Cap each not more than 1% per annum lower than that of the Deleted Mortgage Loan, and a Gross Margin not more than 1% per annum higher or lower than that of the Deleted Mortgage Loan,

(5)    have the same or higher credit quality characteristics than that of the Deleted Mortgage Loan,

(6)    be accruing interest at a rate not more than 1% per annum higher or lower than that of the Deleted Mortgage Loan,

(7)    have a Loan-to-Value Ratio no higher than that of the Deleted Mortgage Loan,

(8)    have a remaining term to maturity not greater than (and not more than one year less than) that of the Deleted Mortgage Loan,

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

        (9)    not permit conversion of the Mortgage Rate from a fixed rate
to a variable rate or vice versa,

        (10)   provide for a prepayment charge on terms substantially similar
to those of the prepayment charge, if any, of the Deleted Mortgage Loan,

        (11)   have the same occupancy type and lien priority as the Deleted
Mortgage Loan, and

        (12)   comply with all of the representations and warranties set
forth in the Pooling and Servicing Agreement as of the date of
substitution.

     This cure, repurchase or substitution obligation constitutes the sole
remedy available to the certificateholders, the Trustee or the Depositor for
omission of, or a material defect in, a Mortgage Loan document.

### http://www.sec.gov/Archives/edgar/data/1021913/000095013606002519/file001.htm

**EMPHASIS ADDED BY EXAMINER:**   Failed Depositor **CWABS, Inc.**  is the only authorized party to assign its interest in loans to the trustee on behalf of certificate holders.  The intent of the recording of documents publically is to let all interested parties understand the rights and obligations of real property owners and lenders.  The use of a privately-owned alternate system conceals such information; and a lack of internal control may allow unauthorized parties to act as a sponsor, bankruptcy-remote depositor, trustee, or beneficial owner of a security interest simply by having an employee or agent sign that they are an officer of another company.  Countrywide Home Loans and  other securitizing parties cannot just make up their own rules.

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

## POOLING AND SERVICING AGREEMENT

**CWABS, INC.,**
Depositor

**COUNTRYWIDE HOME LOANS, INC.,**
Seller

**PARK MONACO INC.,**
Seller

**PARK SIENNA LLC,**
Seller

**COUNTRYWIDE HOME LOANS SERVICING LP,**
Master Servicer

**THE BANK OF NEW YORK,**
Trustee

**and**

**THE BANK OF NEW YORK TRUST COMPANY, N.A.,**
Co-Trustee

--------------------------------

**POOLING AND SERVICING AGREEMENT**

Dated as of March 1, 2006

--------------------------------

Page | 13

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

## ASSET-BACKED CERTIFICATES, SERIES 2006-6

**http://www.sec.gov/Archives/edgar/data/1354828/000090514806003312/0000905148-06-003312.txt**
### POOLING AND SERVICING AGREEMENT
#### Sections 2.01 and 10.03

### Section 2.01 Conveyance of Mortgage Loans.

(a) Each Seller hereby sells, transfers, assigns, sets over and otherwise conveys to the Depositor, without recourse, all the right, title and interest of such Seller in and to the applicable Initial Mortgage Loans, including all interest and principal received and receivable by such Seller on or with respect to applicable Initial Mortgage Loans after the Initial Cut-off Date (to the extent not applied in computing the Cut-off Date Principal Balance thereof) or deposited into the Certificate Account by the Master Servicer on behalf of such Seller as part of the Initial Certificate Account Deposit as provided in this Agreement, other than principal due on the applicable Initial Mortgage Loans on or prior to the Initial Cut-off Date and interest accruing prior to the Initial Cut-off Date. The Master Servicer confirms that, on behalf of the Sellers, concurrently with the transfer and assignment, it has deposited into the Certificate Account the Initial Certificate Account Deposit.

Immediately upon the conveyance of the Initial Mortgage Loans referred to in the preceding paragraph, the Depositor sells, transfers, assigns, sets over and otherwise conveys to the Trustee for benefit of the Certificateholders, without recourse, all right title and interest in the Initial Mortgage Loans.

CHL further agrees (x) to cause The Bank of New York to enter into the Swap Contract Administration Agreement as Swap Contract Administrator and (y) to assign all of its right, title and interest in and to the interest rate swap transaction evidenced by the Confirmation, and to cause all of its obligations in respect of such transaction to be assumed by, the Swap Contract Administrator, on the terms and conditions set forth in the Swap Contract Assignment Agreement.

(b) Subject to the execution and delivery of the related Subsequent Transfer Agreement as provided by Section 2.01(d) and the terms and conditions of this Agreement, each Seller sells, transfers, assigns, sets over and otherwise conveys to the Depositor, without recourse, on each Subsequent Transfer Date, all the right, title and interest of such Seller in and to the related Subsequent Mortgage Loans, including all interest and principal received and receivable by such Seller on or with respect to such Subsequent Mortgage Loans after the related Subsequent Cut-off Date (to the extent not

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

applied in computing the Cut-off Date Principal Balance thereof) or deposited into the Certificate Account by the Master Servicer on behalf of such Seller as part of any related Subsequent Certificate Account Deposit as provided in this Agreement, other than principal due on such Subsequent Mortgage Loans on or prior to the related Subsequent Cut-off Date and interest accruing prior to the related Subsequent Cut-off Date.

Immediately upon the conveyance of the Subsequent Mortgage Loans referred to in the preceding paragraph, the Depositor sells, transfers, assigns, sets over and otherwise conveys to the Trustee for benefit of the Certificateholders, without recourse, all right title and interest in the Subsequent Mortgage Loans.

(c) Each Seller has entered into this Agreement in consideration for the purchase of the Mortgage Loans by the Depositor and has agreed to take the actions specified herein. The Depositor, concurrently with the execution and delivery of this Agreement, hereby sells, transfers, assigns and otherwise conveys to the Trustee for the use and benefit of the Certificateholders, without recourse, all right title and interest in the portion of the Trust Fund not otherwise conveyed to the Trustee pursuant to Section 2.01(a) or (b).

(d) On any Business Day during the Funding Period designated by CHL to the Trustee, the Sellers, the Depositor and the Trustee shall complete, execute and deliver a Subsequent Transfer Agreement. After the execution and delivery of such Subsequent Transfer Agreement, on the Subsequent Transfer Date, the Trustee shall set aside in the Pre-Funding Account an amount equal to the related Subsequent Transfer Date Purchase Amount.

(e) The transfer of Subsequent Mortgage Loans on the Subsequent Transfer Date is subject to the satisfaction of each of the following conditions:

(1) the Trustee and the Underwriter will be provided Opinions of Counsel addressed to the Rating Agencies as with respect to the sale of the Subsequent Mortgage Loans conveyed on such Subsequent Transfer Date (such opinions being substantially similar to the opinions delivered on the Closing Date to the Rating Agencies with respect to the sale of the Initial Mortgage Loans on the Closing Date), to be delivered as provided in Section 2.01(f);

(2) the execution and delivery of such Subsequent Transfer Agreement or conveyance of the related Subsequent Mortgage Loans does not result in a reduction or withdrawal of any ratings assigned to the Certificates by the Rating Agencies;

(3) the Depositor shall deliver to the Trustee an Officer's Certificate confirming the satisfaction of each of the conditions set forth in this Section 2.01(e) required to be satisfied by such Subsequent Transfer Date;

(4) each Subsequent Mortgage Loan conveyed on such Subsequent Transfer Date satisfies the representations and warranties

Page | 15



**Certified Forensic Loan Auditors**

applicable to it under this Agreement, provided, however, that with respect to a breach of a representation and warranty with respect to a Subsequent Mortgage Loan set forth in this clause (4), the obligation under Section 2.03(e) of this Agreement of the applicable Seller, to cure, repurchase or replace such Subsequent Mortgage Loan shall constitute the sole remedy against such Seller respecting such breach available to Certificateholders, the Depositor or the Trustee;

(5) the Subsequent Mortgage Loans conveyed on such Subsequent Transfer Date were selected in a manner reasonably believed not to be adverse to the interests of the Certificateholders;

(6) no Subsequent Mortgage Loan conveyed on such Subsequent Transfer Date was 30 or more days delinquent;

(7) following the conveyance of the Subsequent Mortgage Loans on such Subsequent Transfer Date, the characteristics of each Loan Group will not vary by more than the amount specified below (other than the percentage of Mortgage Loans secured by Mortgaged Properties located in the State of California, which will not exceed 50% of the Mortgage Pool and the percentage of mortgage loans in the Credit Grade Categories of "C" or below, which will not exceed 10% of the Mortgage Loans in each Loan Group) from the characteristics listed below; provided that for the purpose of making such calculations, the characteristics for any Initial Mortgage Loan made will be taken as of the Initial Cut-off Date and the characteristics for any Subsequent Mortgage Loans will be taken as of the Subsequent Cut-off Date;

Loan Group 1

| Characteristic | Value | Permitted Variance or Range |
| --- | --- | --- |
| Average Stated Principal Balance............ | $179,212 | 10% |
| Weighted Average Mortgage Rate............. | 8.200% | 0.10% |
| Weighted Average Original Loan-to-Value Ratio | 80.00% | 3% |
| Weighted Average Remaining Term to Maturity. | 358 months | 3 months |
| Weighted Average Credit Bureau Risk Score... | 602 points | 5 points |

Loan Group 2

| Characteristic | Value | Permitted Variance or Range |
| --- | --- | --- |
| Average Stated Principal Balance............ | $180,235 | 10% |
| Weighted Average Mortgage Rate............. | 8.470% | 0.10% |
| Weighted Average Original Loan-to-Value Ratio | 76.57% | 3% |
| Weighted Average Remaining Term to Maturity. | 358 months | 3 months |
| Weighted Average Credit Bureau Risk Score... | 606 points | 5 points |

Page | 16

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

(8) none of the Sellers or the Depositor is insolvent and neither of the Sellers nor the Depositor will be rendered insolvent by the conveyance of Subsequent Mortgage Loans on such Subsequent Transfer Date; and

(9) the Trustee and the Underwriter will be provided with an Opinion of Counsel, which Opinion of Counsel shall not be at the expense of either the Trustee or the Trust Fund, addressed to the Trustee, to the effect that such purchase of Subsequent Mortgage Loans will not (i) result in the imposition of the tax on "prohibited transactions" on the Trust Fund or contributions after the Startup Date, as defined in Sections 860F(a)(2) and 860G(d) of the Code, respectively or (ii) cause any REMIC formed hereunder to fail to qualify as a REMIC, such opinion to be delivered as provided in Section 2.01(f).

The Trustee shall not be required to investigate or otherwise verify compliance with these conditions, except for its own receipt of documents specified above, and shall be entitled to rely on the required Officer's Certificate.

(f) Within six Business Days after each Subsequent Transfer Date, upon (1) delivery to the Trustee by the Depositor of the Opinions of Counsel referred to in Section 2.01(e)(1) and (e)(9), (2) delivery to the Trustee by CHL (on behalf of each Seller) of a Loan Number and Borrower Identification Mortgage Loan Schedule reflecting the Subsequent Mortgage Loans conveyed on such Subsequent Transfer Date and the Loan Group into which each Subsequent Mortgage Loan was conveyed, (3) deposit in the Certificate Account by the Master Servicer on behalf of the Sellers of the applicable Subsequent Certificate Account Deposit, and (4) delivery to the Trustee by the Depositor of an Officer's Certificate confirming the satisfaction of each of the conditions precedent set forth in this Section 2.01(f), the Trustee shall pay the applicable Seller the Subsequent Transfer Date Transfer Amount from such funds that were set aside in the Pre-Funding Account pursuant to Section 2.01(d). The positive difference, if any, between the Subsequent Transfer Date Transfer Amount and the Subsequent Transfer Date Purchase Amount shall be re-invested by the Trustee in the Pre-Funding Account.

The Trustee shall not be required to investigate or otherwise verify compliance with the conditions set forth in the preceding paragraph, except for its own receipt of documents specified above, and shall be entitled to rely on the required Officer's Certificate.

Within thirty days after each Subsequent Transfer Date, the Depositor shall deliver to the Trustee a letter of a nationally recognized firm of independent public accountants stating whether or not the Subsequent Mortgage Loans conveyed on such Subsequent Transfer Date conform to the characteristics described in Section 2.01(e)(6) and (7).

(g) In connection with the transfer and assignment of each Mortgage Loan, the Depositor has delivered to, and deposited with, the Co-Trustee (or, in the case of the Delay Delivery Mortgage Loans, will deliver

Page | 17

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

to, and deposit with, the Co-Trustee within the time periods specified in the definition of Delay Delivery Mortgage Loans) (except as provided in clause (vi) below) for the benefit of the Certificateholders, the following documents or instruments with respect to each such Mortgage Loan so assigned (with respect to each Mortgage Loan, clause (i) through (vi) below, together, the "Mortgage File" for each such Mortgage Loan):

(i) the original Mortgage Note, endorsed by manual or facsimile signature in blank in the following form: "Pay to the order of _____ without recourse", with all intervening endorsements that show a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note), or, if the original Mortgage Note has been lost or destroyed and not replaced, an original lost note affidavit, stating that the original Mortgage Note was lost or destroyed, together with a copy of the related Mortgage Note and all such intervening endorsements;

(ii) in the case of each Mortgage Loan that is not a MERS Mortgage Loan, the original recorded Mortgage or a copy of such Mortgage, with recording information, and in the case of each MERS Mortgage Loan, the original Mortgage or a copy of such Mortgage, with recording information, noting the presence of the MIN of the Mortgage Loan and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, with evidence of recording indicated thereon, or a copy of the Mortgage certified by the public recording office in which such Mortgage has been recorded;

(iii) in the case of each Mortgage Loan that is not a MERS Mortgage Loan, a duly executed assignment of the Mortgage to "Asset-Backed Certificates, Series 2006-6, CWABS, Inc., by The Bank of New York, a New York banking corporation, as trustee under the Pooling and Servicing Agreement dated as of March 1, 2006, without recourse" or a copy of such assignment, with recording information, (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which such assignment relates);

(iv) the original recorded assignment or assignments of the Mortgage or a copy of such assignments, with recording information, together with all interim recorded assignments of such Mortgage or a copy of such assignments, with recording information (in each case noting the presence of a MIN in the case of each MERS Mortgage Loan);

(v) the original or copies of each assumption, modification, written assurance or substitution agreement, if any; and

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

        (vi) the original or duplicate original lender's title policy or a copy of lender's title policy or a printout of the electronic equivalent and all riders thereto or, in the event such original title policy has not been received from the insurer, such original or duplicate original lender's title policy and all riders thereto shall be delivered within one year of the Closing Date.

        In addition, in connection with the assignment of any MERS Mortgage Loan, each Seller agrees that it will cause, at such Seller's own expense, the MERS(R) System to indicate (and provide evidence to the Trustee that it has done so) that such Mortgage Loans have been assigned by such Seller to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files (a) the code "[IDENTIFY TRUSTEE SPECIFIC CODE]" in the field "[IDENTIFY THE FIELD NAME FOR TRUSTEE]" which identifies the Trustee and (b) the code "[IDENTIFY SERIES SPECIFIC CODE NUMBER]" in the field "Pool Field" which identifies the series of the Certificates issued in connection with such Mortgage Loans. The Sellers further agree that they will not, and will not permit the Master Servicer to, and the Master Servicer agrees that it will not, alter the codes referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

        In the event that in connection with any Mortgage Loan that is not a MERS Mortgage Loan a Seller cannot deliver the original recorded Mortgage or all interim recorded assignments of the Mortgage satisfying the requirements of clause (ii), (iii) or (iv) concurrently with the execution and delivery hereof, such Seller shall deliver or cause to be delivered to the Co-Trustee a true copy of such Mortgage and of each such undelivered interim assignment of the Mortgage each certified by such Seller, the applicable title company, escrow agent or attorney, or the originator of such Mortgage, as the case may be, to be a true and complete copy of the original Mortgage or assignment of Mortgage submitted for recording. For any such Mortgage Loan that is not a MERS Mortgage Loan each Seller shall promptly deliver or cause to be delivered to the Co-Trustee such original Mortgage and such assignment or assignments with evidence of recording indicated thereon upon receipt thereof from the public recording official, or a copy thereof, certified, if appropriate, by the relevant recording office, but in no event shall any such delivery be made later than 270 days following the Closing Date; provided that in the event that by such date such Seller is unable to deliver or cause to be delivered each such Mortgage and each interim assignment by reason of the fact that any such documents have not been returned by the appropriate recording office, or, in the case of each interim assignment, because the related Mortgage has not been returned by the appropriate recording office, such Seller shall deliver or cause to be delivered such documents to the Co-Trustee as promptly as possible upon receipt thereof. If the public recording office in which a Mortgage or interim assignment thereof is recorded retains the original of such Mortgage or assignment, a copy of the original Mortgage or assignment so retained, with evidence of recording thereon, certified to be true and

Page | 19

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

complete by such recording office, shall satisfy a Seller's obligations in Section 2.01. If any document submitted for recording pursuant to this Agreement is (x) lost prior to recording or rejected by the applicable recording office, the applicable Seller shall immediately prepare or cause to be prepared a substitute and submit it for recording, and shall deliver copies and originals thereof in accordance with the foregoing or (y) lost after recording, the applicable Seller shall deliver to the Co-Trustee a copy of such document certified by the applicable public recording office to be a true and complete copy of the original recorded document. Each Seller shall promptly forward or cause to be forwarded to the Co-Trustee (x) from time to time additional original documents evidencing an assumption or modification of a Mortgage Loan and (y) any other documents required to be delivered by the Depositor or the Master Servicer to the Co-Trustee within the time periods specified in this Section 2.01.

With respect to each Mortgage Loan other than a MERS Mortgage Loan as to which the related Mortgaged Property and Mortgage File are located in (a) the State of California or (b) any other jurisdiction under the laws of which the recordation of the assignment specified in clause (iii) above is not necessary to protect the Trustee's and the Certificateholders' interest in the related Mortgage Loan, as evidenced by an Opinion of Counsel delivered by CHL to the Trustee and a copy to the Rating Agencies, in lieu of recording the assignment specified in clause (iii) above, the applicable Seller may deliver an unrecorded assignment in blank, in form otherwise suitable for recording to the Co-Trustee; provided that if the related Mortgage has not been returned from the applicable public recording office, such assignment, or any copy thereof, of the Mortgage may exclude the information to be provided by the recording office. As to any Mortgage Loan other than a MERS Mortgage Loan, the procedures of the preceding sentence shall be applicable only so long as the related Mortgage File is maintained in the possession of the Co-Trustee in the State or jurisdiction described in such sentence. In the event that with respect to Mortgage Loans other than MERS Mortgage Loans (I) any Seller, the Depositor, the Master Servicer or the NIM Insurer gives written notice to the Trustee that recording is required to protect the right, title and interest of the Trustee on behalf of the Certificateholders in and to any Mortgage Loan, (II) a court recharacterizes any sale of the Mortgage Loans as a financing, or (III) as a result of any change in or amendment to the laws of the State or jurisdiction described in the first sentence of this paragraph or any applicable political subdivision thereof, or any change in official position regarding application or interpretation of such laws, including a holding by a court of competent jurisdiction, such recording is so required, the Co-Trustee shall complete the assignment in the manner specified in clause (iii) above and CHL shall submit or cause to be submitted for recording as specified above or, should CHL fail to perform such obligations, the Trustee shall cause the Master Servicer, at the Master Servicer's expense, to cause each such previously unrecorded assignment to be submitted for recording as specified above. In the event a Mortgage File is released to the Master Servicer as a result of the Master Servicer's having completed a Request for Document Release, the Trustee shall complete the assignment of the related Mortgage in the manner specified in clause (iii) above.

So long as the Co-Trustee or its agent maintains an office in the

Page | 20

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

State of California, the Co-Trustee or its agent shall maintain possession of and not remove or attempt to remove from the State of California any of the Mortgage Files as to which the related Mortgaged Property is located in such State. In the event that a Seller fails to record an assignment of a Mortgage Loan as herein provided within 90 days of notice of an event set forth in clause (I), (II) or (III) of the preceding paragraph, the Master Servicer shall prepare and, if required hereunder, file such assignments for recordation in the appropriate real property or other records office. Each Seller hereby appoints the Master Servicer (and any successor servicer hereunder) as its attorney-in-fact with full power and authority acting in its stead for the purpose of such preparation, execution and filing.

In the case of Mortgage Loans that become the subject of a Principal Prepayment between the Closing Date (in the case of Initial Mortgage Loans) or related Subsequent Transfer Date (in the case of Subsequent Mortgage Loans) and the Cut-off Date, CHL shall deposit or cause to be deposited in the Certificate Account the amount required to be deposited therein with respect to such payment pursuant to Section 3.05 hereof.

Notwithstanding anything to the contrary in this Agreement, within thirty days after the Closing Date (in the case of Initial Mortgage Loans) or within twenty days after the related Subsequent Transfer Date (in the case of Subsequent Mortgage Loans), CHL (on behalf of each Seller) shall either (i) deliver to the Co-Trustee the Mortgage File as required pursuant to this Section 2.01 for each Delay Delivery Mortgage Loan or (ii) (A) repurchase the Delay Delivery Mortgage Loan or (B) substitute the Delay Delivery Mortgage Loan for a Replacement Mortgage Loan, which repurchase or substitution shall be accomplished in the manner and subject to the conditions set forth in Section 2.03, provided that if CHL fails to deliver a Mortgage File for any Delay Delivery Mortgage Loan within the period provided in the prior sentence, the cure period provided for in Section 2.02 or in Section 2.03 shall not apply to the initial delivery of the Mortgage File for such Delay Delivery Mortgage Loan, but rather CHL shall have five (5) Business Days to cure such failure to deliver. CHL shall promptly provide each Rating Agency with written notice of any cure, repurchase or substitution made pursuant to the proviso of the preceding sentence. On or before the thirtieth (30th) day (or if such thirtieth day is not a Business Day, the succeeding Business Day) after the Closing Date (in the case of Initial Mortgage Loans) or within twenty days after the related Subsequent Transfer Date (in the case of Subsequent Mortgage Loans), the
Trustee shall, in accordance with the provisions of Section 2.02, send a Delay Delivery Certification substantially in the form annexed hereto as Exhibit G-3 (with any applicable exceptions noted thereon) for all Delay Delivery Mortgage Loans delivered within thirty (30) days after such date. The Trustee will promptly send a copy of such Delay Delivery Certification to each Rating Agency.

Each Seller has entered into this Agreement in consideration for the purchase of the Mortgage Loans sold by such Seller to the Depositor and has agreed to take the actions specified herein. The Depositor, concurrently with the execution and delivery of this Agreement, hereby sells, transfers, assigns and otherwise conveys to the Trustee for the use and benefit of the

Page | 21

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

```
Certificateholders, without recourse, all right title and interest in the
portion of the Trust Fund not otherwise conveyed to the Trust Fund pursuant to
Sections 2.01(a) or (b).
```

<u>http://www.sec.gov/Archives/edgar/data/1354828/000090514806003312/0000905148-06-003312.txt</u>

## <u>Governing Law</u>

```
                     Section 10.03 Governing Law.

          THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED
BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE
AND TO BE PERFORMED IN THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND
REMEDIES OF THEPARTIES HERETO AND THE CERTIFICATEHOLDERS SHALL BE DETERMINED IN
ACCORDANCE WITH SUCH LAWS.
```

<u>http://www.sec.gov/Archives/edgar/data/1354828/000090514806003312/0000905148-06-003312.txt</u>

**New York State Trust Law Statutes state:**

Unless an asset is transferred into a lifetime trust, the asset does not become trust property.  (NY Estates, Powers and Trust Law § 7-1.18).

A trustee's act that is contrary to the trust agreement is void. (NY Estates, Powers and Trust Law § 7-2.4)

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*

# SECTION 3:   FORECLOSURE

**Recorded Events on the Loan Including Foreclosure Issues and Securitization**

| Recorded Chain of Mortgage Possession | | Chain of Note Possession | |
|---|---|---|---|
| Date | Original Mortgage | Date | Note Holder |
| March 6, 2006 Instrument # 8487 Official Records, Johnson County Texas | TERRY SPEED (Borrower) America's Wholesale Lender (Lender) MIN # **1000157-0006463135-7** | February 27, 2006 | America's Wholesale Lender ( Lender) Principal Amount: $149,615 **LOAN # 127872320** |
| July 11, 2011 Instrument # 16257 Official Records, Johnson County Texas | **Assignment of Mortgage to "The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificateholders of CWABS, Inc., Asset-Backed Certificates, Series 2006-6. Signed by Tanyia Hill on behalf of "MERS".** | March 29, 2006 | CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6 (Lender) Principal Amount: $ 149,615 |

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

| | | | |
|---|---|---|---|
| February 10, 2014 Instrument # 2529 Official Records, Johnson County Texas | **Appointment of Substitute Trustee** | | |
| July 10, 2014 Instrument # 14482 Official Records, Johnson County Texas | **Trustee's Deed** | | |

*Note: The above analysis covers primary active loan.  Annotated voluntary lien search located in Exhibit I.*

# REPORT SUMMARY

**Deed of Trust:**

On February 27, 2006, Debtor Terry Speed executed a negotiable promissory note and a security interest in the form of a DEED OF TRUST in the amount of $149,615.00.  This document was filed as document number 8487 in the Official Records of Johnson County, Texas.  *The original lender of the promissory note and beneficiary of the Mortgage is Apex Financial Group, Inc.  Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") is not named as the payee of the note, but is named as acting solely as a "nominee" for the lender as the beneficiary of the security interest Security Deed.*

**Securitization (The Note):**

The NOTE was sold, transferred, assigned and securitized into the **CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6** with a Closing Date of on or about March 29, 2006.

**Assignment of Deed of Trust:**

On July 11, 2011, an Assignment of Deed of Trust was recorded in the Official Records, Johnson County, Texas as instrument number 16257 to The Bank of New York Mellon f/

Page | 24

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

k/a The Bank of New York as Trustee for CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6.    The document was signed by Tanyia Hill for Mortgage Electronic Registration Systems, Inc. in working for Assignee, not Assignor.    Approximately five years and three months had gone by since note was placed into the CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6 and examiner therefore recommends production and review of the then notarized bill of sale; note endorsement; and verifiable proof of funds prior to the cut-off date of March 29, 2006, starting with original lender America's Wholesale Lender, to seller/sponsor Countrywide Home Loans, Inc., to depositor CWABS, Inc., into the CWABS ASSET-BACKED CERTIFICATES TRUST 2006-6 for approval of this Assignment of Deed of Trust. <u>Examiner considers this a document of impropriety requiring rescission for rightful foreclosure to take place until actual purchase by above parties is verified.</u>
<u>Depositor CWABS, Inc., is the only rightful party that can place assets into the trust pursuant to investor offering documents as specified above.</u>

**Appointment of Substitute Trustee:**

On February 10, 2014, an Appointment of Substitute Trustee was recorded in the Official Records, Johnson County, Texas as instrument number 2529.

**Trustee's Deed:**

On July 10, 2014, a Trustee' was recorded in the Official Records, Johnson County, Texas as instrument number 14482.

Page | 25

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

## <u>ASSIGNMENT OF DEED OF TRUST 6/29/2011</u>

**Tanyia Hill** signs for Mortgage Electronic Registration Systems, Inc. without disclosure of actual employment.  This is an indication that she attempted to assign the Deed of Trust to client Bank of New York Mellon f/k/a as The Bank of New York, as Trustee for "the Certificateholders of CWABS, Inc., Asset-Backed Certificates, Series 2006-6 without an Assignor.  This position of unilateral transfer is further strengthened by the fact that here is no evidence of verified proof of funds; a note endorsement; a bill of sale; a declaration of value; or transfer taxes as having been paid to the Johnson County, Texas "for value received" for this $149,615 security interest.

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

Select & Zoom

ASSO
20110000016259

PAGE
3

**RECORDING REQUESTED BY:**
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-984-0407
Richardson, TX 75082

**WHEN RECORDED MAIL DOCUMENT**
**TAX STATEMENT TO:**
BAC HOME LOANS SERVICING, LP
400 National way
SIMI VALLEY, CA  93065

TS No:  11 -0050890
TSG No:  11-6-174969A
APN:  126018101100

SPACE ABOVE THIS LINE FOR RECORDER'S

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-6

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 02/27/2006, EXECUTED
BY: TERRY SPEED, A MARRIED PERSON, AND LAKIESHA JACKSON, TRUSTOR: TO CTC REAL ESTATE
SERVICES, AS TRUSTEE AND RECORDED AS INSTRUMENT NO. 008478 ON 03/06/2006, IN BOOK 3746,
PAGE 0825 OF OFFICIAL RECORDS IN THE COUNTY RECORDERS OFFICE OF JOHNSON COUNTY, IN
THE STATE OF TEXAS. THE LAND AFFECTED BY THIS ASSIGNMENT IS LOCATED IN JOHNSON COUNTY,
THE STATE OF TEXAS AND IS DESCRIBED AS FOLLOWS:

LOT 9, BLOCK 3, OF WEST BEND SOUTH ADDITION, PHASE ONE, AN ADDITION TO THE CITY OF
BURLESON, JOHNSON COUNTY, TEXAS, ACCORDING TO THE MAP/PLAT RECORDED IN VOLUME 9,
PAGE 352 OF THE MAP/PLAT RECORDS OF JOHNSON COUNTY, TEXAS.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE
AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE
UNDER SAID DEED OF TRUST/MORTGAGE.

Page | 27

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

Dated: 6|29, 20 11

By: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

BY: _____ 6|29|11

Tanyia Hill

**Assistant Secretary**

Page 1 of 2                    Form UTAssgn (04/08)



STATE OF **Texas** )

COUNTY OF **Dallas** )

On **JUN 2 9 2011**, before me **Michele Christine Preston**, personally appeared **Tanyia Hill**, known to me (or proved to me on the oath of _____ or through _____ ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

WITNESS MY HAND AND OFFICIAL SEAL

_____                    **Assistant Secretary**

Notary Public's Signature

MICHELE CHRISTINE PRESTON
Notary Public
STATE OF TEXAS
My Comm. Exp. 12/14/11

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2014*
*-All Rights Reserved-*

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Lakkesha Jackson Speed

## DEFENDANTS
The Bank of New York Trust Company, NAAS Trustee

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

RECEIVED

SEP 23 2014

CLERK US DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

County of Residence of First Listed Defendant    Dallas Tx
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*    Angel Reyes & Associates
(Chance Oliver)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 790 Other Labor Litigation | | Act |
| | Med. Malpractice | | ☐ 791 Empl. Ret. Inc. | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☒ 220 Foreclosure | ☐ 441 Voting | Sentence | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 530 General | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | |
| | Other | ☐ 560 Civil Detainee - | (Prisoner Petition) | | |
| | ☐ 448 Education | Conditions of | ☐ 465 Other Immigration | | |
| | | Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☒ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause: FDTPA

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:
*(See instructions):*

JUDGE    Jeff Monk
Jerry D Webber

CAUSE # FD140138
DOCKET NUMBER CC01400276

DATE

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____